F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**August 29, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

REO BENALLY,

Defendant-Appellant.

No. 06-4173

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. NO. 2:06-CR-381-TS)**

Deirdre A. Gorman, Ogden, Utah, for Defendant-Appellant.

Karin M. Fojtik, Assistant United States Attorney, (Brett L. Tolman, United States Attorney with her on the brief), Salt Lake City, Utah, for Plaintiff-Appellee.

Before **MURPHY**, **McWILLIAMS**, and **McCONNELL**, Circuit Judges.

**MURPHY**, Circuit Judge.

I.      **Introduction**

Defendant-Appellant Reo Benally was convicted by a jury of one count of

aggravated sexual abuse of a minor under the age of sixteen while in Indian

Country, in violation of 18 U.S.C. § 2241(c) and § 1153(a). Benally was sentenced to 324 months' imprisonment to be followed by five years' supervised release. Benally appeals his conviction, arguing the district court improperly admitted the testimony of four witnesses regarding Benally's prior acts of sexual assault. This court takes jurisdiction pursuant to 28 U.S.C. § 1291. We conclude the district court did not abuse its discretion by admitting the evidence and **affirm** Benally's conviction.

## II.    Background

The events giving rise to the charged conduct occurred while Benally was acting as guardian to his twelve year old granddaughter, N.W. N.W.'s mother, Rowena A., had left N.W. and her two sisters, S.A. and K.W., ages six and four, respectively, in the care of Benally while Rowena was living in Phoenix, Arizona. Benally also had custody of two of his natural children, J.B.1, a nine-year old boy, and J.B.2, a six-year old girl. On August 23, 2003, Benally took all five children swimming at a river near the family sheep farm on the Navajo reservation in White Mesa, Utah. The group spent the night in the family's one-room hogan.

According to N.W.'s testimony at trial, N.W. and her sisters were sharing a bed, J.B.1 and J.B.2 slept on a separate bed, and Benally slept on a couch between the two beds. At some point during the night, N.W. woke up to find Benally naked and holding a knife to her neck. N.W. testified Benally said he would cut

her if she resisted him. She claimed to have pushed Benally away with her legs and to have grabbed the knife and thrown it across the room. N.W. said Benally then choked her and attempted to remove her from the hogan by pulling her hair and dragging her towards the door. She claimed that at least some of the other children were awake and crying. N.W. testified she lost consciousness from being choked, but that when she regained consciousness, she was back on the bed, her clothing had been removed, and Benally was applying lotion to and rubbing her genitals with his fingers and penis and kissing her legs and breasts. N.W. asserted Benally eventually stopped, put his clothes on, grabbed his car keys, and said he was going to commit suicide. She said he gave her twenty-two dollars and asked her not to disclose the events that had transpired. Benally ultimately did not leave because J.B.1 asked him to stay to drive J.B.1 and J.B.2 back to their boarding school.

The other young children present during the alleged assault also testified at trial. None had a very detailed recollection of the incident, which occurred almost three years earlier, but most remembered either seeing Benally without his clothes on top of N.W. or said Benally was next to N.W. on the bed. Several indicated they were scared or crying or heard N.W. crying or screaming. The testimony of J.B.1, the oldest child among the group other than N.W., corroborated N.W.'s testimony as to Benally's use of a knife in threatening N.W., but J.B.1's testimony was that Benally put the knife away when he got off of

N.W. and put on his clothes. J.B.1 also corroborated N.W.'s assertion that Benally gave her money at the end of the incident.

N.W. testified that, after Benally got off of her, she went outside with her sisters, but when it started sprinkling, Benally told her to come back inside and go to sleep. The next day, Benally took all the children back to his house in Teec Nos Pos, Arizona. After returning to Benally's home, N.W. told her fifteen year old neighbor and friend that her grandfather had almost raped her, but asked him not to tell anyone. A few days later, she told another neighbor, Georginda Pierce, that Benally had almost raped her and repeated the same allegations to Pierce's mother, Lucinda Pierce. Lucinda Pierce called N.W.'s mother, Rowena. N.W. and her sisters were then taken to Child Haven, a child welfare agency, and then sent to live with Virginia S., Benally's sister. N.W. admitted she did not reveal all of the details of the encounter to the first doctor she spoke with because he was a male and she did not feel comfortable talking to him. She also admitted she omitted details when initially interviewed by defense investigators because other children were present.

Physical examinations of N.W. did not reveal evidence indicative of the alleged assault. Georginda Pierce testified that, at the time N.W. related the story to her, she did not see any bruising on N.W.'s neck. N.W. herself admitted she did not sustain any cuts even though she had grabbed the knife blade with both hands. A nurse at Child Haven who saw N.W. after N.W. reported the incident to

-4-

Pierce did not indicate on an intake form that N.W. had any bruises or other injuries. Thirteen days after the incident, the Indian Health Service doctor who examined N.W. did not see any marks or bruising on N.W.'s body. A nurse who examined N.W. about five weeks after the incident found no physical evidence of the attack N.W. described but said that in most cases, there would be no evidence of digital penetration of female genitalia.

There was also testimony at trial about N.W.'s propensity for truthfulness: N.W.'s uncle and Benally's son, Stanford Benally, testified N.W. had lived with him for two years when she was about seven years old, five years before the alleged assault, and was often untruthful. Virginia S., who had herself been raped by Benally as a child, testified N.W. lived with her during the school year following the alleged assault and said N.W. "sometimes" told lies. She agreed that, if N.W. said something, one could not know if it was true. The nurse at Child Haven who examined N.W. after the incident knew N.W. from N.W.'s multiple stays at the agency and testified N.W. was not honest most of the time. Another Child Haven employee indicated N.W. "lies and steals" and was dishonest. A social worker from the school N.W. attended during the school year preceding the incident, however, testified that N.W. was "pretty honest" and "[took] responsibility for her actions." The defense also highlighted inconsistencies in N.W.'s account of the incident, bringing out the differences

between the story she told the doctor who initially examined her, the nurse who examined her five weeks after the alleged assault, and N.W.'s testimony at trial.

Finally, evidence of four of Benally's other sexual assault and child molestation crimes was admitted under Federal Rules of Evidence 413 and 414. The admission of this evidence is the sole issue on appeal. Ruling on Benally's motion in limine to exclude the prior-crimes evidence, the court admitted evidence of three of Benally's prior offenses without an evidentiary hearing because each had resulted in a conviction and the court determined their probative value was not substantially outweighed by a danger of unfair prejudice, pursuant to Rule 403. The court also ultimately admitted evidence of a fourth incident involving the rape of Rowena, Benally's daughter and N.W.'s mother, after holding an evidentiary hearing and concluding a jury could find by a preponderance of the evidence that the rape occurred and that the evidence should not be excluded under Rule 403.

In brief, the four incidents testified to were as follows:

Betty R. testified that Benally's sister was married to her brother. She stated that when she was about twenty years old, about forty years earlier, Benally came to her house when she was home alone babysitting, chased her into a sheep corral about a half a mile from her home, pushed her and held her down, hit her in the eye and on the cheek, and had sexual intercourse with her. Benally was

charged with rape, but pleaded guilty to assault and battery. The rape charge was dismissed.

Sarah J. testified Benally was once married to her older sister's daughter. She indicated that, when she was thirteen, or about forty years prior to the current trial, Benally came to her home, threw her on the floor, and had forcible sexual intercourse with her. Benally pleaded guilty to rape.

Virginia, Benally's sister, testified that, when she was thirteen or fourteen, she lived at the sheep camp with her mother. After a drunken Benally and their mother argued, Virginia left the family home and ran toward a nearby hill. Benally followed Virginia down the hill, stabbed her in the arm with a can opener, and pushed her back up the hill and into his truck. He drove a mile or two, put her in the back of the truck and had sexual intercourse with her. Her mother came to retrieve her and took her to a hospital where she spoke with police. Benally was ultimately convicted by a jury of raping his sister.

Rowena, N.W.'s mother and Benally's daughter, testified that Benally raped her when she was approximately ten or twelve years old, nineteen to twenty-one years before the alleged incident involving N.W. Benally had picked up Rowena and her brother, Stanford, from school on a Friday. He took them to the sheep camp and hogan in which the alleged assault against N.W. occurred. Benally had been drinking and asked Rowena if she would have sex with him. Rowena tried to escape to her grandmother's house next door by asking if she

could go outside to the bathroom, but Benally accompanied her outside. When Rowena and Benally re-entered the hogan, Benally instructed Rowena to lie on his bed and had sexual intercourse with her. Rowena testified she told her grandmother and stepmother about the incident, but that neither did anything to help her. She indicated her brother, Stanford, had been present during the rape. Later in the trial, Stanford corroborated Rowena's testimony. No criminal charges were ever filed.

The district court twice gave cautionary jury instructions to mitigate the prejudicial impact of the Rule 413/414 evidence. Before the testimony regarding the prior incidents began, the court instructed the jury as follows:

> Members of the jury, I want to give you a cautionary instruction now because we are about to hear some evidence with this witness and two witnesses that will follow after her, some evidence of the defendant's commission of another offense or offenses of sexual assault or child molestation.
>
> In a criminal case in which the defendant is accused of an offense of sexual assault or child molestation, evidence of the defendant's commission of another offense or offenses of sexual assault or child molestation is admissible and may be considered for its bearing on any matter to which it is relevant. However, evidence of a prior offense on its own is not sufficient to prove the defendant guilty of the crime charged in the indictment. Bear in mind as you consider this evidence, at all times the government has the burden of proving that the defendant committed each of the elements of the offense charged in the indictment. I remind you that the defendant is not on trial for any act, conduct or offense not charged in the indictment.

Before the jury began deliberating, the court again cautioned the jury against improper use of the Rule 413/414 evidence, instructing the jury,

> In a criminal case in which the defendant is accused of an offense of sexual assault or child molestation, evidence of the defendant's commission of another offense or offenses of sexual assault or child molestation is admissible and may be considered for its bearing on any matter to which it is relevant.
>
> However, evidence of a prior offense on its own is not sufficient to prove the defendant guilty of the crime charged in the Indictment. Bear in mind as you consider this evidence at all times, the government has the burden of proving that the defendant committed each of the elements of the offense charged in the Indictment. I remind you that the defendant is not on trial for any act, conduct, or offense

On appeal, Benally contends the district court erroneously concluded in its Rule 403 analysis that the probative value of the Rule 413/414 evidence was not substantially outweighed by the danger of unfair prejudice. Benally argues the prior acts have little probative value because they are dissimilar from the alleged assault involving N.W., happened too long ago, and were infrequent. Benally also argues the prior incidents all occurred when he was an alcoholic and that he no longer drinks. Finally, Benally claims the Rule 413/414 evidence was unnecessary. Benally contends the admission of the evidence prejudiced the jury and amounted to error that was not harmless.

## III.  Discussion

This court reviews a district court's evidentiary rulings for an abuse of discretion. *United States v. Stiger*, 413 F.3d 1185, 1197 (10th Cir. 2005). A

district court's ruling will not be disturbed "absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." *Id.* (quotation omitted). If this court concludes the admission of evidence was erroneous, it must then consider whether the error was harmless. *Id.*

Federal Rules of Evidence 413 and 414 address propensity evidence in the context of sexual assault and child molestation. These rules provide an exception to the general rule codified in Rule 404(a), which prohibits the admission of evidence for the purpose of showing a defendant's propensity to commit bad acts. *See United States v. Guardia*, 135 F.3d 1325, 1331 (10th Cir. 1998). Pursuant to Rule 413(a), when "the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant." Rule 414(a) contains identical language related to accusations of child molestation.[1] Consistent with congressional intent regarding the admission of evidence tending to show the defendant's propensity to commit sexual assault or child molestation, "courts are to 'liberally' admit evidence of

---

[1]"Child" is defined as a "person below the age of fourteen" for the purposes of Rule 414. *See* Fed. R. Evid. 414(d). Evidence of certain sexual acts involving a child may be admitted under either Rule 413 or Rule 414. *See id.* 413(c); *id.* 414(c). Because N.W. was twelve years old at the time of the alleged assault and two of Benally's prior victims were under the age of fourteen at the time Benally raped them, two of Benally's prior acts were eligible for admission under either Rule 413 or Rule 414.

prior uncharged sex offenses." *United States v. Meacham*, 115 F.3d 1488, 1492 (10th Cir. 1997).

Under *Guardia* and *United States v. McHorse*, 179 F.3d 889, 897–98 (10th Cir. 1999)*,* evidence of a prior sexual assault must meet three threshold requirements before it may be considered for admission. The district court must determine (1) the defendant is accused of a crime involving sexual assault or child molestation, (2) the evidence proffered is evidence of the defendant's commission of another offense or offenses involving sexual assault or child molestation, and (3) the evidence is relevant. *McHorse*, 179 F.3d at 898; *Guardia*, 135 F.3d at 1328. Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Even where evidence is determined to be relevant, however, the admissibility of Rule 413/414 evidence is subject to the Rule 403 balancing test, which permits the exclusion of relevant evidence "'if its probative value is substantially outweighed by the danger of unfair prejudice.'" *Guardia*, 135 F.3d at 1329 (quoting Fed. R. Evid. 403) (holding Rule 403 applies to determine the admissibility of Rule 413 evidence); *Meacham*, 115 F.3d at 1495 (stating Rule 414 evidence is subject to Rule 403 balancing).

In *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998), this court explained that in cases where the government seeks to introduce Rule 413

evidence, the district court must make a preliminary finding that a jury could reasonably find that the "other act" occurred by a preponderance of the evidence. The district court should then consider:

> 1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the government can avail itself of any less prejudicial evidence. When analyzing the probative dangers, a court considers: 1) how likely it is such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct.

*Id.* (quotation omitted). To further assist district courts in analyzing probativeness under the second *Enjady* factor, the *Guardia* court enumerated considerations which may influence the court's analysis, including (1) the similarity of the prior acts and the charged acts, (2) the time lapse between the other acts and the charged acts, (3) the frequency of the prior acts, (4) the occurrence of intervening events, and (5) the need for evidence beyond the defendant's and alleged victim's testimony. *Guardia*, 135 F.3d at 1331.

When the government seeks to introduce Rule 413 or 414 evidence, the district court has an obligation "to fully evaluate the proffered . . . evidence and make a clear record of the reasoning behind its findings" as to whether the evidence survives the Rule 403 balancing test. *Id.*; *see also United States v. Castillo*, 140 F.3d 874, 884 (10th Cir. 1998). The district court fulfilled that obligation in this case. It carefully addressed the *Enjady* and *Guardia* factors and

reached a permissible conclusion regarding the admissibility of the testimonial evidence.

The district court first determined Benally's prior conduct was relevant and the other *Guardia* threshold requirements had been met. The court then methodically addressed the *Enjady* factors to determine whether the evidence was excludable under Rule 403. As to the first three incidents, the court concluded the fact of Benally's rape and assault and battery convictions satisfied the first *Enjady* factor for the incidents involving Virginia, Sarah, and Betty, respectively. In connection with the alleged incident involving Rowena, the court concluded an evidentiary hearing was necessary to determine, as a preliminary matter, whether a jury could find by a preponderance of the evidence that Benally raped Rowena.

Referring specifically to the rapes of Virginia, Sarah, and Betty, the court next addressed the second *Enjady* factor, the probative value of the 413/414 evidence. *Enjady*, 134 F.3d at 1433. The court looked to the *Guardia* court's guidance in focusing its probativeness analysis. *See Guardia*, 135 F.3d at 1331. Most significant in the court's determination that the evidence was highly probative was the similarity between the current charge and the prior acts. The court stated,

> The incidents which the government seeks to introduce contain a
> number of similarities to the incident alleged in this case. The
> incidents involve young females, mostly young female family
> members. The individuals involved in the prior incidents are similar
> in age to each other and are similar in age to the individual involved

-13-

in the charged offense. Additionally, many of the incidents involved either the use of force or a weapon, as did the charged incident. Thus, the similarity of these incidents shows that they are highly probative.

As to the other considerations enumerated in *Guardia* regarding the probative value of the testimony, the court acknowledged the significant time lapse between the incidents involving Virginia, Sarah, and Betty, and the charged conduct involving N.W. The court ultimately concluded, however, that the time lapse did not in itself negate the probative value of testimony about the prior incidents and stated the incidents were still "highly probative, despite their age." In support of its conclusion, the court cited the Tenth Circuit's discussion of congressional intent in *Meacham*, which indicated "there is no time limit beyond which prior sex offenses by a defendant are inadmissible." *Meacham*, 115 F.3d at 1492 (citing Rule 413's Historical Notes which, in turn, cite to congressional history). The court also stated there had been no intervening events between the first cluster of assaults, the alleged incident involving Rowena, and the charged conduct involving N.W., to undermine the probative value of the evidence. In completing its analysis of probativeness, the court turned to the government's need for the Rule 413/414 evidence and stated the government's reliance on child witnesses whose credibility would "surely [be] challenge[d]" necessitated the introduction of the prior acts evidence.

-14-

The court next returned to its *Enjady* analysis, stating the material fact at issue, whether the alleged assault against N.W. occurred, was "hotly disputed." It also concluded that, because of questions about the credibility of the child witnesses, there was no other evidence available to the defense that would be less prejudicial. Addressing the "probative dangers" enumerated by the *Enjady* court, the district court concluded the risk of an improper jury verdict would be lessened by providing limiting instructions to the jury; it determined any risk of jury distraction could be ameliorated by minimizing the quantity of evidence offered as well as by the limiting jury instructions. Finally, the court stated it did not believe the introduction of the evidence would be so time consuming as to warrant its exclusion. Based on its evaluation of all the *Enjady* factors, the court concluded the probative value of the evidence at issue in the incidents involving Virginia, Sarah, and Betty was not substantially outweighed by the danger of unfair prejudice to Benally.

In a separate proceeding, the court held an evidentiary hearing to determine the admissibility of Rowena's testimony regarding her alleged rape by Benally. After hearing from Rowena, the court determined a jury could find by a preponderance of the evidence that the rape had occurred, satisfying *Enjady*'s

threshold requirement. The court then, once again, recited the *Enjady* factors and stated Rowena's testimony would be admitted.[2]

Considering the record as a whole, this court sees nothing to suggest the district court abused its discretion when ruling on the admissibility of the testimony of Benally's four prior victims. Benally has not presented any argument regarding the application of the *Enjady* factors or *Guardia* considerations that persuades us otherwise. Contrary to Benally's assertions, the prior incidents contain significant similarities to N.W.'s alleged assault: each involved a young woman whom Benally previously knew and two were close relatives; all involved force of some type. It is inconsequential that the prior incidents involved an actual rape, whereas Benally's purported assault on N.W. involved only genital touching. Especially given the circumstances of the assault on N.W., where an actual rape could conceivably have occurred had N.W. not attempted to fight Benally off and had the four other children not been present,

---

[2]During the evidentiary hearing, the district court referred to its ruling regarding the admissibility of the other three incidents and stated that analysis also applied to the probative value and probative dangers of Rowena's testimony. Although the earlier ruling was explicitly limited only to the three incidents involving Virginia, Sarah, and Betty, the court clearly considered in its order the incident involving Rowena when discussing the probativeness of Benally's prior conduct and the lack of intervening circumstances. Because the four incidents are all substantially similar to one another, the thorough analysis of the *Enjady* factors and *Guardia* probativeness considerations undertaken in the district court's earlier ruling was sufficient to permit the court's more abbreviated discussion of *Enjady* at the evidentiary hearing. *See United States v. Castillo*, 140 F.3d 874, 884 (10th Cir. 1999).

this difference in the degree of severity of Benally's conduct cannot serve as a basis for this court to reverse the district court's considered judgment. Benally's argument regarding the time lapse between the prior incidents and the charged assault is similarly unpersuasive since Benally himself acknowledges this circuit has observed no bright line rule regarding the timing of charged conduct relative to prior acts. *See Meacham*, 115 F.3d at 1492; *see also United States v. Drewry*, 365 F.3d 957, 960 (10th Cir. 2004) ("Sufficient factual similarity can rehabilitate evidence . . . that might otherwise be inadmissible due to staleness."), *vacated on other grounds*, 543 U.S. 1103 (2005), *and remanded*, 133 Fed. App'x 543 (10th Cir. 2005).

As to Benally's argument that all of the prior acts occurred while he was an alcoholic, Benally is correct that a change in his drinking habits may generally constitute an intervening circumstance. The change in Benally's drinking habits was, however, presented to the jury through the testimony of Rowena and Stanford Benally. The jury was therefore able to consider this testimony, along with all the other testimony, when weighing the importance of the Rule 413/414 evidence. As a consequence, the change in Benally's drinking habits is not an adequate intervening circumstance requiring the exclusion of the prior acts testimony.

Finally, Benally is incorrect in his assertion that the only reason to introduce this evidence was to bias the jury. Evidence of other similar crimes

involving sexual assault and child molestation was determined by Congress to be probative of a defendant's propensity to commit such crimes. *See Meacham*, 115 F.3d at 1492. The purpose for introducing evidence of Benally's prior sexual assaults was to provide the jury with just such probative propensity evidence.[3] Additionally, any jury bias that may have resulted from the district court's decision to admit this evidence would have been mitigated by the court's two separate instructions to the jury regarding the jury's permissible and impermissible uses of the evidence.

## IV. Conclusion

The district court's decision to admit evidence of Benally's four prior sexual assaults was not an abuse of the district court's discretion. The evidentiary ruling of the district court was proper and Benally's conviction is **AFFIRMED.**

---

[3]At oral argument, there was some suggestion that the district court admitted the Rule 413/414 evidence solely because, without it, the government's case was exceptionally weak. We agree that this alone would have been an impermissible justification for admission and would have amounted to an abuse of the district court's discretion. This court's thorough review of the record, however, satisfies us that the district court's decision to admit the evidence was grounded in a proper consideration of the *Enjady* and *Guardia* factors and not in an improper consideration of the strength or weakness of the government's case.