UNITED STATES COURT OF APPEALS

June 27, 2016

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

DONOVAN GENE MERCER,

     Defendant-Appellant.

No. 15-6152
(D.C. No. 4:14-CR-00280-M-1)
(W. D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE, BALDOCK** and **MURPHY**, Circuit Judges.[**]

Donovan Gene Mercer challenges his conviction for possession of child

pornography and seeks a new trial. At a motions hearing before Mercer's trial, the

district court ruled that evidence that Mercer had previously molested three children

and had previously possessed child pornography would be admitted at trial under

Federal Rule of Evidence 414. Mercer appeals, raising one issue: "Whether the

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is, therefore, submitted without oral argument.

district court abused its discretion in concluding, in this child pornography case, that the probative value of evidence that Mr. Mercer had molested three children substantially outweighed the risk of unfair prejudice." Aplt. Br. at 1. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I

Mercer was charged with three counts of accessing, and attempting to access, with intent to view child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). The three counts were based on two hard drives and one memory card that were found during a search of Mercer's home. Files containing child pornography had been downloaded from the Internet onto Mercer's family computer, which was located in the living room and was usually left unsecured. Mercer elected to go to trial on the charges, maintaining what he described as an alibi defense, i.e., that someone else was responsible for downloading the child pornography onto the computer.

Prior to trial, the government filed a motion in limine asking the court to permit the admission at trial of evidence under Federal Rule of Evidence 414 that Mercer had molested three children. All three children were relatives of Mercer's ex-wife, Stacy Mercer. The government also sought the admission of evidence that in 2000, Stacy Mercer (at that time Mercer's wife) found a disk containing child pornography in an apartment the two of them shared. The government argued both the evidence of prior molestations and the disk containing pornography were admissible "to show [Mercer's] propensity to commit the charged offenses . . . [and to] show Mercer's

2

intent, knowledge, and absence of mistake with respect to the charged offenses."
ROA Vol. II at 26.

Mercer objected to the admission of the proffered evidence. With respect to the allegations of molestation, his main response was that even if the evidence was admissible under Rule 414, it should be excluded under Rule 403. He argued that the staleness of the allegations, the fact that they led to no charges when they were first made, and the fact that they differed from the instant offenses diminished their probative value. He also argued that the stigma associated with child molestation heightened the likelihood of an improperly based verdict, i.e., the verdict would be based on past acts rather than evidence supporting the present charges. The government replied that Mercer's propensity to view child pornography would be a central issue in the trial and that such evidence satisfied the Rule 403 balancing test.

The district court held a hearing on the government's motion and four witnesses testified: J.M., Te.M., Tr.M, and Stacy Mercer. J.M., Te.M., and Tr.M. each testified that Mercer had molested them at separate times in the 1990s. J.M. testified that Mercer molested him in 1998 when J.M. was five years old; Te.M. testified that Mercer molested her when she was about nine or ten years old; and Tr.M. testified that Mercer molested her when she was about six or seven years old. Stacy Mercer testified that in 2000, while cleaning the apartment that she and Mercer were preparing to vacate, she found a floppy disk containing child pornography on top of a cabinet. Mercer then presented the testimony of his wife, Jennifer Mercer, followed

3

by Dr. Richard Kishur. Dr. Kishur testified that no causal relationship exists between child molestation and viewing child pornography. The district court granted the government's motion, concluding that the evidence was admissible under Rules 414 and 403, and issued a written order specifically detailing its findings and reasoning.

At trial, the government presented Tr.M. as its first witness, and J.M. and Te.M. as its final two witnesses; each recounted their allegations of abuse. Before the testimony of each of the alleged abuse victims and in its final instructions, the district court instructed the jury that the testimony could be considered "for its bearing on any matter to which it was relevant" but was not sufficient in itself to prove guilt on the present charges, and that Mercer was not on trial for "any act, conduct or offense not charged in the indictment." ROA Vol. I at 218; ROA Vol. IV at 164, 379, 384. The jury convicted Mercer on all counts, and Mercer timely appeals.

## II

We review the district court's evidentiary rulings, including admission under Federal Rules of Evidence 414 and 403, for abuse of discretion. United States v. Benally, 500 F.3d 1085, 1089 (10th Cir. 2007) (citing United States v. Stiger, 413 F.3d 1185, 1197 (10th Cir. 2005)). For us to conclude that the district court abused its discretion, there must be "a distinct showing [its ruling] was based on a clearly erroneous finding of fact or an erroneous conclusion of law or [the ruling] manifests a clear error of judgment." Id. (quoting Stiger, 413 F.3d at 1197). In other words, "we may not reverse the district court's evidentiary ruling if 'it falls within the bounds of

4

permissible choice in the circumstances and is not arbitrary, capricious or whimsical.'" United States v. Sturm, 673 F.3d 1274, 1286 (10th Cir. 2012) (quoting United States v. Smith, 534 F.3d 1211, 1218 (10th Cir. 2008)).

Rule 414 provides an exception, applicable in criminal child-molestation cases (including child pornography cases), to the general prohibition of evidence regarding the defendant's propensity to commit crimes or other bad acts. Id. at 1089–90 (citing United States v. Guardia, 135 F.3d 1326, 1331 (10th Cir. 1998)). Rule 414(a) reads: "In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 414(a). After finding that evidence satisfies the threshold requirements of Rule 414,[1] the district court must apply the Rule 403 balancing test. Sturm, 673 F.3d at 1284 (citing United States v. Meacham, 115 F.3d 1488, 1492 (10th Cir. 1997)). We have held that "'courts are to "liberally" admit evidence of prior uncharged sex offenses,' but cannot ignore the balancing requirement of Rule 403." United States v. Mann, 193 F.3d 1172, 1173 (10th Cir. 1999) (quoting Meacham, 115 F.3d at 1492).

---

[1] Evidence may be admitted under Rule 414 only if it meets three threshold requirements: (1) the defendant is accused of a crime involving child molestation; (2) the evidence admitted shows a prior act of child molestation; and (3) the evidence is relevant. Benally, 500 F.3d at 1090 (citing United States v. McHorse, 179 F.3d 889, 898 (10th Cir. 1999); Guardia, 135 F.3d at 1328). The district court found the evidence satisfied the Rule 414 requirements. Supp. ROA Vol. I at 18–19. Mercer does not contest the Rule 414 threshold requirements on appeal.

On appeal, Mercer only contends that the district court abused its discretion in its balancing of the evidence under Rule 403 by concluding that the probative value of the evidence of the prior molestations was not substantially outweighed by the danger of unfair prejudice. He argues that the court abused its discretion by "greatly exaggerating the probative value of the evidence" while "giving short shrift to the risk of unfair prejudice." Aplt. Br. at 12. Importantly, he does not contest the admission of Stacy Mercer's testimony concerning the floppy disk she found containing child pornography.

In applying the Rule 403 test to Rule 414 evidence, the district court should weigh "1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the government can avail itself of any less prejudicial evidence"[2] against "1) how likely [it is] such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct." United States v. Enjady, 134 F.3d 1427, 1433 (10th Cir. 1998) (quoting Mark A. Sheft, Federal Rule of Evidence 413: A Dangerous New Frontier, 33 Am. Crim. L. Rev. 57, 59 n.16 (1995)).[3] The court, in its Rule 414 analysis, must make a clear

_____

[2] These four factors are referred to as the "Enjady factors." See Benally, 500 F.3d at 1091.

[3] Enjady involved Rule 413, but the same analysis applies to Rule 414. See Benally, 500 F.3d at 1089–91.

6

record of its reasoning and findings as to the 403 balancing test. Benally, 500 F.3d at 1091 (citing Guardia, 135 F.3d at 1331; United States v. Castillo, 140 F.3d 874, 884 (10th Cir. 1998)). In applying the Enjady test, "no single factor is dispositive." Mann, 193 F.3d at 1175. The district court here found that the Rule 414 evidence satisfied the Rule 403 test, and made a clear record of its reasoning. We conclude that the district court did not abuse its discretion.

## A. First *Enjady* Factor

The first Enjady factor is "how clearly the prior act has been proved." Enjady, 134 F.3d at 1433. Under this factor, the district court must find "that a jury could reasonably find that the 'other act' occurred by a preponderance of the evidence." Id. (citation omitted). The district court did so here, finding "that a jury could reasonably find by a preponderance of the evidence that the prior child molestation . . . occurred." Supp. ROA Vol. I at 20. The court specifically found that the testimony of the three alleged victims was credible.

Mercer concedes that "the complainants' testimony may be sufficient to sustain the district court's preliminary finding," yet argues that "there were nevertheless substantial reasons to doubt the accuracy of their accounts." Aplt. Br. at 13. Mercer's concession is sufficient to withstand our deferential review; the district court's finding was permissible and reasonable under the circumstances because the testimony may have been sufficient. In other words, the district court's decision was not arbitrary, capricious, whimsical, or clearly erroneous, and was therefore not an abuse of

7

discretion.

Mercer wants us to reweigh the credibility of the witnesses, but that is not our role: "Our abuse of discretion review 'affords the district court considerable discretion in performing the Rule 403 balancing test' because 'district court judges have front-row seats during trial and extensive experience ruling on evidentiary issues.'" United States v. MacKay, 715 F.3d 807, 839 (10th Cir. 2013) (quoting United States v. Cerno, 529 F.3d 926, 933 (10th Cir. 2008)). Mercer argues that the district court was in a worse position to assess the validity of the allegations than the investigators and prosecutors who declined to pursue the allegations when they were first reported. Even if that were the case, our ability to assess credibility is even worse than that of the district court. The district court did not abuse its discretion in finding that the first Enjady factor weighed in favor of admission of the evidence.

*B. Second Enjady Factor*

The second Enjady factor is "how probative the evidence is of the material fact it is admitted to prove." Enjady, 134 F.3d at 1433. In assessing this factor, courts consider five additional subfactors: "(1) the similarity of the prior acts and the charged acts, (2) the time lapse between the other acts and the charged acts, (3) the frequency of the prior acts, (4) the occurrence of intervening events, and (5) the need for evidence beyond the defendant's and alleged victim's testimony." Benally, 500 F.3d at 1090–91 (citing Guardia, 135 F.3d at 1331). The district court here considered these factors and found that "the evidence is clearly probative of defendant's

8

propensity to access or attempt to access child pornography and defendant's intent, knowledge, and absence of mistake." Supp. ROA Vol. I at 20–21. The court found that the prior molestations and the charged crimes were sufficiently similar because each involved prepubescent children and because the alleged molestations involved similar acts to those shown in the child pornography at issue. The court then found that the "time lapse [between the allegations and trial] does not significantly affect the probative value of the evidence." Id. at 21. It also found that "neither the frequency of the prior acts nor the occurrence of intervening events significantly affects the probative value." Id. Lastly, the court found that "the government w[ould] only be presenting the testimony of [the alleged victims] in relation to th[e Rule 414] evidence." Id.

Mercer argues that there was no evidence presented that child molesters are predisposed to viewing child pornography. He also argues that the child molestation evidence was too stale to be probative. Most importantly, the district court found that the evidence was probative of Mercer's lack of mistake—directly rebutting his assertion that perhaps someone else accessed the child pornography on his computer; therefore, the evidence was not admitted solely to show propensity. And although Mercer is correct that there is little to no support in the record for a finding that a child molester has the propensity to view child pornography, such support is not necessary for us to uphold the district court's conclusion that the evidence was probative. Rather, Rule 414 evidence "may be considered on any matter to which it is relevant,"

9

including the defendant's propensity.  Fed. R. Evid. 414; see Sturm, 673 F.3d at 1285.

Congress did not require additional proof of propensity—the rule is based on the

principle that evidence of child molestation is inherently probative of the propensity to

commit other acts of child molestation or abuse, including child pornography

offenses.  140 Cong. Rec. S12,990–01 (daily ed. Sept. 20, 1994) (statement of Sen.

Dole) ("[A] history of similar [child molestation] acts tends to be exceptionally

probative . . . .").  Given the history and purpose of Rule 414, the district court's

finding that the prior acts were sufficiently similar to the charged crimes was not a

clear abuse of discretion.

Further, the staleness of the evidence does not lead us to conclude that the

district court abused its discretion.  We said in Meacham that although Rule 414 does

not address staleness in its language, "[t]he historical notes to the rules and

congressional history indicate there is no time limit beyond which prior sex offenses

by a defendant are inadmissible."  Meacham, 115 F.3d at 1492; see 140 Cong. Rec.

S12990–01 ("No time limit is imposed on the uncharged offenses for which evidence

may be admitted; as a practical matter, evidence of other sex offenses by the defendant

is often probative and properly admitted, notwithstanding substantial lapses of time in

relation to the charged offense or offenses.").  In Benally, we rejected the defendant's

staleness argument even though two of the alleged prior acts had occurred

approximately forty years prior to trial.  500 F.3d at 1088, 1092.  It is true that we

have previously said "remoteness in time of the prior crime must weigh in the

10

calculus," and that similarity of prior acts may overcome staleness concerns. United States v. Batton, 602 F.3d 1191, 1199 (10th Cir. 2010) ("In this case, the similarity of the two incidents is so obvious the intervening years are not sufficient to dilute the probative value of the prior act evidence."); Meacham, 115 F.3d at 1495 ("Similarity of prior acts to the charged offense may outweigh concerns of remoteness in time."); United States v. Drewry, 365 F.3d 957, 960 (10th Cir. 2004) ("Sufficient factual similarity can rehabilitate evidence of prior uncharged offenses that might otherwise be inadmissible due to staleness. Moreover, case law makes clear [the victim's] testimony was not so stale or old as to undermine its relevance." (citations omitted)). Here, the district court specifically found the prior acts to be "sufficiently similar" to the charged offenses, and found that the "time lapse does not significantly affect the probative value of the evidence." Supp. ROA Vol. I at 21. The district court did not abuse its discretion.

### C. Third Enjady Factor

The third Enjady factor is "how seriously disputed the material fact is." Enjady, 134 F.3d at 1433. Mercer concedes the point, admitting that this factor weighed against him because he vigorously denied both that he was guilty and that he had a propensity to view child pornography. We note this factor because the district court found that it "weigh[ed] heavily in favor of admissibility." Supp. ROA Vol. I at 22. We have previously said, "The more seriously disputed the material fact, the more heavily this factor weighs in favor of admissibility." Sturm, 673 F.3d at 1286.

11

Therefore, because Mercer denied the allegations and their implications vigorously, this factor weighed significantly against him.

  *D. Fourth Enjady Factor*

  The fourth Enjady factor is "whether the government can avail itself of any less prejudicial evidence." Enjady, 134 F.3d at 1433. The district court found that "there [was] no less prejudicial way to adduce the evidence at trial." Supp. ROA Vol. I at 22. Mercer argues that the district court considered the wrong question—he says the court should have asked "whether there was any evidence *other than* the allegations of abuse that the government could have used to prove [his] propensity," but instead asked "whether there was any less prejudicial way to 'adduce the evidence' of abuse itself." Aplt. Br. at 15. Mercer may be correct, but even if the district court misconstrued the fourth factor, this error does not rise to an abuse of discretion. In Sturm, we addressed a very similar issue, and found that the district court had "misconceived the question posed by the third Enjady factor." Sturm, 673 F.3d at 1286. We held that this was not an abuse of discretion "[b]ecause the district court's decision to admit the evidence constitute[d] a permissible choice in the circumstances." Id. Even if the district court here misconstrued the fourth factor, its overall decision in weighing the factors was not an abuse of discretion. Although Mercer argues that less prejudicial evidence existed—Stacy Mercer's testimony related to the disk containing child pornography—the district court's decision to also admit the testimony of the victims of prior molestations fell within the bounds of

12

permissible choice in the circumstances. Because the remaining factors weighed in favor of admissibility, and because the court's decision to admit the evidence would have been reasonable even if the court found the fourth factor weighed in Mercer's favor, the district court did not abuse its discretion.

*E. Danger of Unfair Prejudice Factors*

District courts weigh the above factors against "1) how likely is it such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct." Enjady, 134 F.3d at 1433 (quotation omitted). The district court performed that weighing function here, finding that the evidence would not contribute to an improperly based verdict because the court would give limiting instructions "at the time the testimony [wa]s given" and again prior to jury deliberations. Supp. ROA Vol. I at 22. Given that we assume juries follow their instructions, the court found the likelihood of an improper verdict was small. Id. (quoting McHorse, 179 F.3d at 897 ("A central assumption of our jurisprudence is that juries follow the instructions they receive.")). On the second factor, the court found the evidence would "not distract the jury in any significant way from the central issues of the trial." Id. And on the third factor, it found the testimony would be brief. Mercer argues that the evidence presented an "overwhelming" risk of unfair prejudice. Aplt. Br. at 16. He argues essentially that the character of the evidence itself made it overly prejudicial. He states that the testimony would have "undoubtedly had a

13

profound impact on his jury." Id. at 16. He then quotes Guardia in arguing that the jury would feel "intense disgust" toward him, which would lead the jury to convict him "because a bad person deserves punishment." Id. at 17 (quoting Guardia, 135 F.3d at 1331). Mercer is mistaken; in Guardia, we said that a district court should "take into account" the risks of unfair prejudice, and that "[t]hese risks will be present every time evidence is admitted under Rule 413." Guardia, 135 F.3d at 1331 (citing United States v. Patterson, 20 F.3d 809, 814 (10th Cir. 1994) ("Evidence of prior bad acts will always be prejudicial.")). To hold otherwise would undermine Rule 414 entirely.

Rule 414 evidence will almost always have a profound impact on the jury and cause it to feel disgust toward the defendant. Congress knew this when it enacted Rule 414,[4] and intended to allow a fairly broad range of evidence to show the defendant's propensity—even stating that the rules "establish[ed] a general presumption that evidence of past similar offenses in sexual assault and child molestation cases is admissible at trial." 140 Cong. Rec. S12,990–01 ("In child molestation cases, for example, a history of similar acts tends to be exceptionally

---

[4] Congress enacted Rules 413, 414, and 415 in 1994, and these rules were "not the product of the rulemaking process contemplated by the Rules Enabling Act." Rosanna Cavallaro, Federal Rules of Evidence 413–415 and the Struggle for Rulemaking Preeminence, 98 J. Crim. L. & Criminology 31, 35 n.14 (2007) (citing 28 U.S.C. § 2072 (1990)). That is, Congress rather than the Federal Judicial Conference (the rulemaking body of the Federal Rules of Evidence) enacted these rules, perhaps because the Judicial Conference and others "heatedly contested" the enactment of the rules "substantively and procedurally." Id. at 34–35, 35 n.13 (footnotes and citations omitted).

14

probative because it shows an unusual disposition of the defendant—a sexual or sado-sexual interest in children—that simply does not exist in ordinary people.").

Mercer also contends that the prosecution used tactics that maximized the prejudicial effect of the evidence on the jury, by presenting the alleged victims as the first and last witnesses. Essentially, he argues that the order of the witnesses itself made the testimony prejudicial and that the court should have excluded the evidence under Rule 403 for this reason. Mercer did not object to the order of the witnesses at trial and does not argue plain error; regardless, his argument would fail even if he had objected. In addition to our deferential review of Rule 403 decisions, we will not readily question the district court on such trial management issues: "A district court has 'considerable discretion' in running its courtroom. Courts must exercise control 'over the mode and order of examining witnesses and presenting evidence.'" United States v. Rodebaugh, 798 F.3d 1281, 1294 (10th Cir. 2015) (first quoting United States v. Banks, 761 F.3d 1163, 1193 (10th Cir. 2014); then quoting Fed. R. Evid. 611(a)). These discretionary decisions by the district court "will not be disturbed absent a manifest injustice to the parties." Id. (quoting Thweatt v. Ontko, 814 F.2d 1466, 1470 (10th Cir. 1987)). The order of testimony was not sufficiently prejudicial to warrant reversal.

Lastly, Mercer argues that the limiting instruction given by the district court was insufficient to overcome the risk of prejudice. He states that "while jurors are normally presumed to follow their instructions, 'in some circumstances the risk that

15

the jury will not, or cannot follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored.'" Aplt. Br. at 17 (quoting Simmons v. South Carolina, 512 U.S. 154, 171 (1994) (plurality opinion)). But in Simmons, the Supreme Court found that the district court's instruction actually misled and frustrated the jury. 512 U.S. at 170. Mercer does not adequately explain why the instruction here was deficient or why it would mislead or frustrate the jury more than a limiting instruction in any other Rule 414 case. He merely contends that the government's tactics combined with the prejudicial nature of the evidence "surely undermined the effectiveness of the court's instructions." Aplt. Br. at 18. This argument is unconvincing; the district court did not abuse its discretion in finding that the limiting instructions it gave would overcome the risk of unfair prejudice.

### F. Conclusion: Balancing the Factors

The district court did not abuse its discretion in applying the Rule 403 balancing test. Even if it erred on any individual factor, the court's overall decision to admit the evidence was within the bounds of permissible choice under the circumstances and was not arbitrary, capricious or whimsical. It was reasonable to conclude that the probative value of the evidence (as intended by Congress) was not substantially outweighed by the risk of unfair prejudice.

16

## III

For the above reasons, we AFFIRM Mercer's conviction.


Entered for the Court


Mary Beck Briscoe
Circuit Judge