IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 114,325

STATE OF KANSAS,
*Appellee*,

v.

MURAD RAZZAQ,
*Appellant*.

SYLLABUS BY THE COURT

1.

Under K.S.A. 2018 Supp. 22-3402(b), a defendant is not subject to prosecution if the defendant is not brought to trial within 180 days after arraignment unless the delay happens as a result of the application or fault of the defendant.

2.

Under judicially created safeguards for the rights of defendants applicable when the State seeks to introduce evidence of other bad acts, a district court must weigh the probative value of such evidence against the danger of unfair prejudice from it.

Review of the judgment of the Court of Appeals in an unpublished opinion filed October 21, 2016. Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed April 19, 2019. The judgment of the Court of Appeals affirming the district court is affirmed. The judgment of the district court is affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant, and *Murad Razzaq*, appellant, was on a supplemental brief pro se.

1

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

ROSEN, J.: Murad Razzaq challenges his conviction and sentence for one count of aggravated indecent liberties with a child. Finding no error, we affirm. This case presents issues in common with *State v. Boysaw*, 309 Kan. ___, ___ P.3d ___ (No. 112,834, this day decided), slip op. at 9: whether K.S.A. 2018 Supp. 60-455(d) constitutionally allows evidence showing the propensity of a defendant to commit crimes of a sexual nature.

FACTS

In 2005, Razzaq was convicted and sentenced in Missouri for one felony count of statutory sodomy and one misdemeanor count of child molestation. The victims were two girls under the age of 12. While still subject to the jurisdiction of the Missouri Department of Corrections, he spent time with his mother in Derby, Kansas.

At around 2 in the morning of May 27, 2011, the night before B.D.'s 15th birthday, B.D.'s mother noticed that her daughter was not in the girl's bedroom. The mother woke up her husband, T.D., and the two discovered that a window in B.D.'s bedroom was unlocked.

The parents started to call B.D.'s friends, including Murad Razzaq's brother, and eventually learned of a couple of addresses where she might be found. By early afternoon, the parents had checked out one of the addresses, located in a mobile home park, but it turned out to be incorrect. They called 911 and reported that their daughter was missing but that they were proceeding to an address where they thought they would

2

find her and wanted police assistance. They then drove to that address, where they found the front door ajar and saw B.D. standing in the living room. Razzaq, who was 27 years old at the time, was sitting on a couch, and two other men were sitting across from them. The father directed the mother to escort B.D. out to the car. The mother returned to the house, where her husband asked Razzaq if there had been sexual contact between Razzaq and B.D. Razzaq said, "Yes, I've had sexual relations with your daughter."

The police subsequently arrived and, after talking with different people at the scene, took Razzaq into custody. Initially reluctant to speak with detectives about whether sexual intercourse had occurred—saying that it was "none of their business"—B.D. eventually confirmed that she and Razzaq had engaged in sexual relations. Razzaq was taken to a local hospital, where, pursuant to a search warrant, clothing, swabs, and hair samples were collected from him. Testing later showed that swabs from Razzaq's penis had major contribution from B.D. and minor contribution from Razzaq.

B.D. was also taken to the hospital, where she cooperated with a nurse who conducted a physical examination of her. In response to the nurse's questions, B.D. said that she had been "intimate" with Razzaq, which she clarified to mean that she had sexual intercourse with him. She informed the nurse that she had sneaked out of her house through her bedroom window and that Razzaq picked her up and drove her to his mother's house at about 1 that morning. She said that she and Razzaq had sex at several places around the home. Testifying at trial, B.D. confirmed this account: she called Razzaq from her bedroom and then left through a bedroom window to meet him. She testified that she was under the influence of alcohol and drugs and that she and Razzaq engaged in sexual intercourse several times.

3

On June 1, 2011, the State filed a complaint charging Razzaq under K.S.A. 21-3504(a)(1) with one count of aggravated indecent liberties with a child who was 14 or more years of age but less than 16 years of age. On March 7, 2014, the State filed a motion seeking admission of evidence under K.S.A. 2013 Supp. 60-455(d). Razzaq countered with a motion asking the court to bar the presentation of any prior-acts evidence. Following a hearing, the court granted the State's motion, finding that the evidence was material and had probative value.

A jury found Razzaq guilty of aggravated indecent liberties. The court sentenced him to a midrange sentence of 176 months. Razzaq filed a timely notice of appeal. The Court of Appeals affirmed the conviction in *State v. Razzaq*, No. 114,325, 2016 WL 6139148 (Kan. App. 2016) (unpublished opinion). This court granted review on all issues.

*Probative Value of Prior Convictions Versus Prejudicial Effect*

After a witness testified that he had determined that Razzaq had been convicted of two sex crimes in Missouri, the court interjected a lengthy explanation to the jury. The court gave the statutory definition of the Missouri crimes:

> "'A person commits the crime of statutory sodomy in the first degree if he has devious sexual intercourse with another person who is less than 14 years old.' The crime of child molestation, second degree, is defined by statutes in the state of Missouri as follows: 'A person commits the crime of child molestation in the second degree if he or she subjects another person, who is less than 17 years of age, to sexual contact.'"

The court went on to state that the evidence could be considered for its bearing on Razzaq's disposition or propensity to commit a crime such as the one charged in the case at bar. The court informed the jury that it was the jury's prerogative to decide how much weight to give the evidence. The court cautioned the jury that Razzaq was not on trial for other crimes and it should not convict him based solely on the evidence of the other crimes.

Razzaq argues on appeal that the district court abused its discretion when it allowed the State to introduce, through a witness, the fact of his prior convictions in Missouri for sex crimes. This issue is similar to an issue raised in *Boysaw*, 309 Kan. at ___, slip op. at 9. The discussion below incorporates but does not repeat all aspects of the *Boysaw* analysis.

This court reviews for abuse of discretion a district court determination that the probative value of evidence outweighs its potential for producing undue prejudice. A district court abuses its discretion when: (1) no reasonable person would take the view adopted by the judge; (2) a ruling is based on an error of law; or (3) substantial competent evidence does not support a finding of fact on which the exercise of discretion is based. *State v. Bowen*, 299 Kan. 339, 348-49, 323 P.3d 853 (2014).

As noted in *Boysaw*, this court has created safeguards for defendants when the State seeks to introduce evidence of other bad acts. These safeguards resemble those of Federal Rule of Evidence 403, and they require a district court to weigh the probative value of such evidence against the danger of unfair prejudice from it. See, e.g., *State v. Gunby*, 282 Kan. 39, 48, 144 P.3d 647 (2006).

No single test exists for weighing probative value against prejudicial effect. The Tenth Circuit has suggested certain factors to be considered, such as the similarity of the

5

prior acts to the acts charged, the closeness in time of the prior acts to the charged acts, the frequency of the prior acts, the presence or lack of intervening events, and the need for evidence beyond the testimony of the defendant and alleged victim. See, e.g., *United States v. Guardia*, 135 F.3d 1326, 1331 (10th Cir. 1998).

In *State v. Prine*, 297 Kan. 460, 478, 303 P.3d 662 (2013), this court referred favorably to *United States v. Benally*, 500 F.3d 1085, 1090-91 (10th Cir. 2007), which incorporated other tests into the weighing test for propensity evidence in sex crimes. Citing prior decisions, the *Benally* court recommended considering specific factors in analyzing the two elements to be weighed.

In evaluating the probative value, the district court should consider, among other factors: how clearly the prior act was proved; how probative the evidence is of the material fact sought to be proved; how seriously disputed the material fact is; and whether the government can obtain any less prejudicial evidence. In considering the possible prejudicial effect, the district court should consider: the likelihood that such evidence will contribute to an improperly based jury verdict; the extent to which such evidence may distract the jury from the central issues of the trial; and how time consuming it will be to prove the prior conduct. *Benally*, 500 F.3d at 1090-91.

In the present case, Razzaq's attorney argued several reasons why he considered the evidence either weakly probative or strongly prejudicial: consent was not an issue in his case; the victims in the Missouri case were girls six years of age and the facts of the cases were therefore dissimilar; and simply reading the fact of conviction and the relevant Missouri statutes would give the jury little or misleading information about Razzaq's propensity to commit such crimes.

6

The district court made two explicit findings: the Missouri convictions were relevant, and the Missouri convictions had probative value in helping to prove that Razzaq committed the crime of aggravated indecent liberties in the case at bar. The court found that the elements of the Missouri crimes were sufficiently similar to those being charged in Kansas to give the evidence probative value. The court noted the balancing test at the beginning of its explanation of its decision and admitted the evidence. Although the district court did not explicitly determine that the probative value outweighed the prejudicial effect, this court may presume that the district court made all the necessary factual findings to support its judgment in the absence of an objection to inadequate findings. *State v. Neighbors*, 299 Kan. 234, 240, 328 P.3d 1081 (2014). We conclude that the district court implicitly rejected Razzaq's argument of prejudice when it denied his motion.

The *Benally* factors to be evaluated for prejudicial effect include the likelihood that such evidence will contribute to an improperly based jury verdict; the extent to which such evidence may distract the jury from the central issues of the trial; and how time consuming it will be to prove the prior conduct. 500 F.3d at 1090-91.

In the present case, it was unlikely that the evidence contributed to a jury verdict based on improper evidence or law. The State presented a day and a half of witness testimony tending to prove guilt. The evidence of the Missouri convictions made up a small part of the State's case, and it was presented in just a few transcript lines. The court instructed the jury not to base its verdict solely on that evidence.

Although the district court would not have known at the time of its ruling the defense that Razzaq would raise if he chose to testify, his testimony gave the propensity evidence greater probative value. Razzaq apparently thought he could prove that he had not done what B.D. and the biological evidence said he did. He testified at trial that he

never had sexual relations with B.D. He testified that he repeatedly told T.D. that he did not have sex with B.D. and finally said that he did only when T.D. became so verbally abusive that Razzaq feared he might become the victim of violence. Razzaq also testified that, in his opinion, a great conspiracy had taken place among police, laboratory workers, and other witnesses to place him in criminal jeopardy. He further testified that it was likely that B.D. made up her allegations against him because she was "transferring" her parents' and the police accusations. These claims of a conspiracy bolstered the case for admitting the evidence of the Missouri convictions. The evidence made it less likely that everyone involved in the process was engaged in a great conspiracy and made it more likely that Razzaq was somebody who liked to have sex with underage girls and tried to get away with it.

The district court implicitly weighed the probative value of the evidence of the Missouri convictions against the danger of undue prejudice and did not abuse its discretion in admitting the evidence.

*The Constitutionality of K.S.A. 2018 Supp. 60-455(d) Under the Kansas Constitution*

This issue is much the same as the one addressed in *Boysaw*. As did Boysaw, Razzaq conflates federal and Kansas due process law. The *Boysaw* analysis is not repeated here:  the history of "lustful disposition" evidence in Kansas suggests that K.S.A. 2018 Supp. 60-455(d) does not violate the Bill of Rights contained in the Kansas Constitution. Razzaq offers this court no explanation of why the analytical pattern for determining the constitutionality of K.S.A. 2018 Supp. 60-455(d) under the Kansas Constitution should differ from that under the United States Constitution. As we explain in *Boysaw*, 309 Kan. at ___, slip op. at 14, the historical development of prior-crimes evidence in Kansas leads us to conclude that K.S.A. 2018 Supp. 60-455(d) satisfies the due process requirements of the federal Constitution. To the extent that Razzaq asserts

that other states have found state constitutional violations in their bad-acts evidentiary statutes, he fails to show that those state constitutions have similar wording, origins, or histories of construction as the Kansas Constitution. If the Kansas Constitution calls for a more strict review than or an analysis otherwise at odds with the federal Constitution, Razzaq does not present this court with support for such a proposition. As argued in this case, we find no violation of the Kansas Constitution.

*Asserted Speedy Trial Violations*

With the permission of the Court of Appeals, Razzaq filed a supplemental brief in which he raised a speedy trial issue, and the State filed a supplemental reply brief in response. The Court of Appeals held that Razzaq failed to demonstrate error. This court granted Razzaq's petition for review, including an argument that the Court of Appeals inadequately addressed the issue raised in the supplemental brief.

The violation of a defendant's right to a speedy trial is a question of law subject to de novo review. *State v. Sievers*, 299 Kan. 305, 307, 323 P.3d 170 (2014).

The district court held a hearing and then engaged in a detailed breakdown of the delays in bringing Razzaq to trial. The district court detailed Razzaq's numerous claims of ineffective assistance of counsel, the dismissals of counsel, and continuances granted to bring new counsel up to speed. The court concluded that 1,222 days elapsed between arraignment and trial. Of those, 1,062 days were attributed to the defendant, leaving 160 days counted against the State. Razzaq was in the custody of Missouri for a significant portion of the time, and he obtained an appearance bond when his Missouri term expired. The 160 days was well within the statutory 180-day requirement of K.S.A. 2018 Supp. 22-3402(b).

9

In his brief, Razzaq argues that the speedy trial statute contains mandatory language: in the event that a person charged with a crime is not brought to trial within 180 days after arraignment, "such person shall be entitled to be discharged from further liability to be tried for the crime charged . . . ." K.S.A. 2018 Supp. 22-3402(b). He ignores the language of the same sentence, "unless the delay shall happen as a result of the application or fault of the defendant . . . ."

The Court of Appeals deemed the argument waived because Razzaq did not provide citations to the record identifying errors, and it is this conclusion that he raises on review. The Court of Appeals went on to note, however:

> "The statute clearly provides any error by the district court in charging the delay to Razzaq may not be used by him to support dismissal of the charges. Here, the delays were attributable to Razzaq's direct requests—continuances required as he went through seven attorneys between arraignment and trial—and he cannot now use his requested continuances during the 3-1/2 years between arraignment and trial to support dismissal of the charges. Razzaq's speedy trial claim is without merit." *Razzaq*, 2016 WL 6139148, at *5.

Neither in his briefing nor in his petition for review does Razzaq identify any error in the district court's calculations of days attributable to the parties, and he does not identify any particular delays that were improperly attributed to him or any particular days that were counted incorrectly. Razzaq makes only bald assertions that the statutory time was exceeded and that he did not consent to any of the delays. A review of the records shows, however, that he was present at hearings on replacement of counsel and that the delays were necessitated by his and his attorneys' requests.

The district court and the Court of Appeals correctly determined that the record does not support Razzaq's speedy trial claims.

10

*Use of Prior Convictions to Enhance Sentences*

Finally, Razzaq asks this court to reconsider our holding in *State v. Ivory*, 273 Kan. 44, 45-47, 41 P.3d 781 (2002) (right to a factual determination by a jury does not apply when sentence based in part on defendant's criminal history score). As in *Boysaw*, we decline to do so here.

CONCLUSION

Razzaq fails to convince us that any error occurred in the conduct of his trial that requires reversal. We therefore affirm the judgment of the Court of Appeals and the judgment of the district court.