NOT DESIGNATED FOR PUBLICATION

No. 119,261

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

NATHAN RAY HAILEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Meade District Court; SIDNEY R. THOMAS, judge. Opinion filed September 20, 2019. Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., BRUNS and WARNER, JJ.

PER CURIAM: A jury convicted Nathan Ray Hailey of rape, aggravated kidnapping, and criminal threat. The district court sentenced him to a Hard 25 sentence and additional consecutive sentences of 272 months and 6 months. On appeal, Hailey claims the district court erred when it introduced evidence of other instances of sexual misconduct under K.S.A. 2018 Supp. 60-455(d), alleging that the statute is unconstitutional and the introduction of the particular evidence here constituted an abuse of discretion. Hailey also claims that the district court should have granted his request for a psychological evaluation for the complaining witness and that the district court violated

1

Hailey's rights when it used prior convictions to increase his sentence without the convictions being proven to a jury beyond a reasonable doubt. Finding no error, we affirm Hailey's convictions and sentence.

FACTUAL BACKGROUND

When M.H. was about 14, her then-boyfriend noticed that she began acting upset, quiet, and distant. M.H.'s boyfriend asked her what was going on. M.H. eventually confided that when she was younger, her uncle—Nathan Ray Hailey—raped her. M.H. explained that she had been thinking about the incident lately. M.H.'s boyfriend told M.H.'s mother about this disclosure. In December 2015, the Meade County Sheriff's Department passed along the information to the Child Victim's Unit of the Kansas Bureau of Investigation. Based on M.H.'s allegations, the State charged Hailey with rape, aggravated kidnapping, and criminal threat.

At trial, the district court heard testimony from several witnesses, including M.H. M.H. testified that in 2009, she was 8 years old. Her parents were divorced, and she lived back and forth between her mother's house and her father's house. Around that time, M.H.'s uncle, Hailey, lived at her father's house for a few months after he had moved to Kansas from Arizona.

M.H. testified that when she and Hailey were alone at the house one day, she was sitting on the couch in the living area watching television. Hailey instructed M.H. to clean her bedroom. M.H. ignored him, as it was uncommon for Hailey to participate in parenting the kids or to tell M.H. to do chores around the house. When M.H. did not do as Hailey instructed, he became frustrated, raised his voice, and again told M.H. to clean her room. M.H. testified she got up and went into her bedroom after Hailey used a "very angry voice" because she did not want anyone to get mad at her.

2

Hailey followed M.H. into the bedroom and shut the door behind him. Hailey told M.H. to take off her clothes. Stunned, she initially did not do so. Eventually, she complied after he told her to do so again "in a stern voice" because she was scared. Hailey then unzipped his pants and held M.H. down while he penetrated her. M.H. testified that after Hailey raped her, he stood up and told her that if she told anyone what happened, he would kill her. M.H. believed his threat.

M.H. and other witnesses testified about the lasting effects M.H. suffered as a result of this incident. M.H. began cutting herself around age 12 to cover up emotional pain. M.H. testified that the physical pain from cutting made her forget the anguish from memories "of the rape, the nightmares, [and] the wanting to die" she was experiencing. M.H developed strained relationships with her parents and tried to run away several times. Additionally, M.H. attempted suicide three times. M.H. testified that her emotional trauma heightened as the trial approach: "I didn't feel like I could go through with it without breaking down and seeing him again. And, I just wanted it all to end. I didn't want to go through pain anymore."

Over the defendant's objection, the State elicited testimony under K.S.A. 2018 Supp. 60-455(d) from several witnesses regarding three instances of other sexual misconduct by Hailey.

*First*, A.G., one of Hailey's ex-wives and the mother of his daughter, testified that she and Hailey had been married and lived together in Arizona from 2000 until about 2004. In 2009—after Hailey moved to Kansas—Hailey's father contacted A.G. and informed her that Hailey had been arrested on child pornography charges in Kansas. A.G. immediately filed for emergency full custody and temporary full custody of their daughter, E.G. During the ensuing custody case, A.G. learned that Hailey had child pornography on his computer. Hailey's explanation for why he had those materials was that he had worked as a corrections officer for sex offenders while in Arizona, and he

3

wanted to better understand why the people he supervised would be interested in the pornographic images. On cross-examination, A.G. testified upon questioning by Hailey's attorney that Hailey had been acquitted of the child pornography charges.

*Second*, A.G. testified that in 2017—the year before Hailey's trial—A.G.'s daughter E.G. told her stepfather (who had adopted E.G. after Hailey's parental rights were terminated in 2013), grandmother, and soon after A.G. that she had flashbacks of inappropriate behavior by Hailey. E.G., who was 16 years old at Hailey's trial, testified that she remembered one incident when she was between 2 and 4 years old when Hailey pinned her down onto a bed and touched her vagina with his hand. E.G. testified that sometimes these flashbacks would be quick images, and sometimes she would remember the full event. When she disclosed this information to her stepfather, grandmother, and mother in 2017, E.G. was unaware of M.H.'s allegation against Hailey. E.G. testified that she and M.H. were only about a month apart in age, and they looked alike—in fact, growing up, they referred to each other as twins.

*Third*, K.V., another of Hailey's ex-wives, testified that Hailey was a model partner while they were dating but became sexually abusive when they were married. K.V. testified that some of their sexual activities were nonconsensual and that Hailey raped her often. When asked what she meant by "rape," K.V. testified that she would ask him to stop, and he would refuse. K.V. testified that Hailey would often physically restrain her during these incidents—which she estimated occurred monthly—with his body weight or with ties and rope. K.V. explained that some of these encounters took place while other people were present in the house, but she did not cry out because Hailey told her she "could not yell" or "it would be worse" for her.

Hailey also testified at trial. He said that in 2009, he moved from Arizona to his brother's home in Kansas. He denied ever spending time alone with M.H., yelling at her, raping her, or threatening her. Hailey testified that he noticed no changes in M.H.'s

4

behavior or her interactions with him during the time he lived with the family or in the brief encounters they had since he moved out of the house. Hailey denied any sexual misconduct with his daughter, E.G., and testified that all of his sexual encounters with K.V. were consensual.

The jury convicted Hailey of rape, aggravated kidnapping, and criminal threat. The district court sentenced Hailey to a Hard 25 sentence—a lifetime sentence without the possibility of parole for 25 years and additional consecutive sentences of 272 months and 6 months. Hailey appeals.

## DISCUSSION

1. *The district court did not commit reversible error by introducing evidence of Hailey's other sexual misconduct under K.S.A. 2018 Supp. 60-455(d).*

K.S.A. 2018 Supp. 60-455 addresses the admissibility of evidence of a person's other crimes or other civil wrongs. Subsection (a) of that statute contains a statement against using evidence of other bad acts as propensity evidence—that "evidence that a person committed a crime or civil wrong . . . is inadmissible to prove such person's disposition to commit [that act] as the basis for an inference that the person committed another crime or civil wrong on another specified occasion." K.S.A. 2018 Supp. 60-455(a).

In 2009, the Legislature amended K.S.A. 60-455 and created an exception to this rule, specifically permitting use of a person's sex offenses and misconduct as propensity evidence when the person is charged with another sex offense as long as the evidence is otherwise relevant and not unduly prejudicial. K.S.A. 2018 Supp. 60-455(d) states:

> "Except as provided in K.S.A. 60-445 . . . , in a criminal action in which the defendant is accused of a sex offense . . . , evidence of the defendant's commission of

5

another act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative."

K.S.A. 60-445, which is referenced in K.S.A. 2018 Supp. 60-455(d), provides a district court with "discretion" to exclude relevant and otherwise admissible evidence if the court finds that the "probative value" of the evidence "is substantially outweighed by the risk that its admission will unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate" its offering.

Before trial, the State filed a motion to admit evidence regarding three instances of Hailey's sexual misconduct under K.S.A. 2018 Supp. 60-455(d): (1) Hailey's sexual relations with his daughter, E.G.; (2) the child pornography found on his computer; and (3) his sexual assaults of K.V. Hailey objected, claiming it was "unconstitutional propensity evidence," that the evidence was not relevant, and that the evidence was more prejudicial than probative.

On the constitutionality question, the district court observed that Hailey had not provided any caselaw as to why K.S.A. 2018 Supp. 60-455(d) was unconstitutional and the court was bound by decisions of the Kansas appellate courts upholding the statute.

The court then turned to the admissibility of the proffered evidence. Having considered the factors for the admissibility of sexual misconduct evidence in *United States v. Benally*, 500 F.3d 1085, 1090-91 (10th Cir. 2007), the district court ruled that at least some evidence of each alleged incident would be allowed, subject to limitations.

For the allegations involving E.G., the district court noted, "I don't think you could get much more probative and relevant than that." In particular, the court explained, while Hailey's defense was that he had a young daughter and knew how to conduct himself around young girls, "this tells a different story." The court therefore concluded that the

6

evidence of Hailey's relationship with E.G. was "very relevant," "very similar to . . . this case," and was not "unduly prejudicial or unfair."

After hearing live testimony from K.V., the court allowed the State to elicit testimony regarding Hailey's sexual aggression and rape of his ex-wife, noting "the initial pattern" of aggression was similar, particularly in that Hailey used "intimidation" and "power," and "progressively [became] more brutal." The court ruled that the State could not introduce evidence in its case-in-chief about whether Hailey had his ex-wife dress up in childish clothing or wear pigtails, as those actions themselves were "not misconduct." The court also found that evidence that Hailey routinely watched pornographic videos of adults was not admissible because "pornography in and of itself is not sexual misconduct." Moreover, the court noted that the potential for prejudice outweighed that evidence's probative value.

Finally, with regard to the allegations that Hailey had child pornography on his computer and related charges, the district court held that the child pornography was admissible in that it was sexual misconduct and "sets the context" for A.G.'s concerns and subsequent custody dispute to limit Hailey's contact with his daughter. But the court found the State could not introduce evidence of Hailey's subsequent acquittal on those charges, finding such information "has a potential of being . . . unduly prejudicial" because "the jury may say, well, they didn't convict him this last time, we're not going to let him get . . . by with this again."

On appeal, Hailey again challenges the constitutionality of K.S.A. 2018 Supp. 60-455(d) under the United States and Kansas Constitutions. He also claims the district court's admission of three incidents of other sexual misconduct by Hailey constituted an abuse of discretion under the facts of this case.

7

1.1.   *Hailey has not demonstrated that K.S.A. 2018 Supp. 60-455(d) violates the United States or Kansas Constitution.*

Hailey argues that K.S.A. 2018 Supp. 60-455(d) violates his fundamental right to due process and his right to a fair trial under the United States and Kansas Constitutions. Specifically, Hailey alleges the statute's allowance of prior sexual conduct to demonstrate a defendant's propensity authorizes a jury to punish a defendant for his or her past behavior, eroding the presumption of innocence and effectively lowering the State's burden of proof.

A statute's constitutionality is a question of law subject to unlimited review. *State v. Petersen-Beard*, 304 Kan. 192, 194, 377 P.3d 1127, *cert. denied* 137 S. Ct. 226 (2016). The party challenging a statute has the burden to prove that the law violates the constitution. *Leiker v. Gafford*, 245 Kan. 325, 363-64, 778 P.2d 823 (1989). This burden is not one to be taken lightly. Kansas courts are not "the critic of the legislature, but rather, the guardian of the Constitution." *Tri-State Hotel Co. v. Londerholm*, 195 Kan. 748, 760, 408 P.2d 877 (1965). Thus, a challenged statute "comes before the court cloaked in a presumption of constitutionality." *Leiker*, 245 Kan. at 364. The Kansas Supreme Court has consistently explained:

> "The constitutionality of a statute is presumed, and all doubts must be resolved in favor of its validity. Before a statute may be stricken down, it must clearly appear the statute violates the Constitution. Moreover, it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and, if there is any reasonable way to construe the statute as constitutionally valid, that should be done." *Bair v. Peck*, 248 Kan. 824, Syl. ¶ 1, 811 P.2d 1176 (1991).

As long as the Legislature acts within its constitutional authority, courts do not weigh in on "[t]he propriety, wisdom, necessity[,] and expedience of legislation." *Leiker v. Employment Security Bd. of Review*, 8 Kan. App. 2d 379, Syl. ¶ 7, 659 P.2d 236 (1983).

8

During the pendency of this appeal, our Kansas Supreme Court decided *State v. Boysaw*, 309 Kan. 526, 439 P.3d 909 (2019), affirming a decision of this court upholding the constitutionality of K.S.A. 2018 Supp. 60-455(d) under both the federal and Kansas Constitutions. In reaching that conclusion, the *Boysaw* court observed that "[m]ost state and federal courts that have considered the question have found no violation of essential federal constitutional rights in the admission of propensity evidence." 309 Kan. at 532. Likewise, the Federal Rules of Evidence akin to K.S.A. 2018 Supp. 60-455(d)—Federal Rules of Evidence 413 and 414(a)—"have consistently withstood due process challenges." 309 Kan. at 533. Thus, having considered Kansas' "long history of allowing propensity evidence" in cases involving sex offenses, 309 Kan. at 534, and the additional discretion afforded by K.S.A. 60-445, *Boysaw* explained:

> "The history of the use of propensity evidence in Kansas, coupled with the procedural safeguard of weighing the probative against the prejudicial effect of the evidence, leads us to conclude that K.S.A. 2018 Supp. 60-455(d) does not offend any principle of justice so rooted in the traditions and conscience of the people of this state that it may be deemed fundamental. K.S.A. 2018 Supp. 60-455(d) does not violate federal constitutional protections." 309 Kan. at 536.

Hailey's arguments on appeal are identical to those the Kansas Supreme Court—and this court—rejected in *Boysaw*. K.S.A. 2018 Supp. 60-455(d) does not violate the guaranteed protections of the United States Constitution.

Hailey also asserts that even if K.S.A. 2018 Supp. 60-455(d) survives federal constitutional muster, Kansas courts may nonetheless interpret the Kansas Constitution Bill of Rights to provide broader constitutional protection in this context. The Kansas Supreme Court did not directly reach this question in *Boysaw*. But it did note that Kansas courts have historically "analyzed sections 10 and 18 as coextensive with" federal due-process protections. 309 Kan. at 537. Likewise, in *State v. Razzaq*, 309 Kan. 544, 550, 439 P.3d 903 (2019), released the same day as *Boysaw*, the Supreme Court noted that

9

"the history of 'lustful disposition' evidence in Kansas suggests that K.S.A. 2018 Supp. 60-455(d) does not violate the Bill of Rights contained in the Kansas Constitution."

Instead of undertaking an extensive analysis under the Kansas Constitution in *Boysaw* and *Razzaq*, the court in both cases emphasized that it is incumbent upon parties bringing claims under the state constitution to demonstrate some language in the text of our Kansas Constitution or some development in our state's history that supports a deviation from our traditional coextensive analysis. *Boysaw*, 309 Kan. at 536-38; *Razzaq*, 309 Kan. at 550. *Boysaw*'s discussion is particularly instructive:

> "Boysaw points to nothing in the history of the Kansas Constitution or in our caselaw that would suggest a different analytical framework for questions of fundamental fairness, due process, or double jeopardy. . . . In short, Boysaw does not articulate grounds explaining why a different result should follow if state, rather than federal, guidelines are to govern the constitutionality of propensity evidence.
>
> . . . .
>
> "Any future challenge to the admission of propensity evidence under K.S.A. 2018 Supp. 60-455(d) that is based on state constitutional provisions will need to explain why this court should depart from its long history of coextensive analysis under the two constitutions." 309 Kan. at 536-38.

Beyond generally referencing Kansas Constitution Bill of Rights §§ 1, 2, 10, and 18, Hailey provides no explanation for why he claims the Kansas Constitution should be interpreted to provide more expansive protection of propensity evidence. See 309 Kan. at 536. Instead, he posits that state appellate courts in Iowa and Missouri have interpreted their respective state constitutions to provide different protection than the federal Constitution on issues involving propensity evidence. But the fact that the Kansas Constitution *can* provide different protection from the federal Constitution in the abstract does not mean Hailey has demonstrated that our analysis under the state constitution should so differ here—particularly in light of Kansas' long history of allowing relevant

10

propensity evidence in cases involving sexual misconduct. Hailey has not demonstrated that K.S.A. 2018 Supp. 60-455(d) violates the Kansas Constitution.

1.2. *The district court did not abuse its discretion in admitting the evidence under K.S.A. 2018 Supp. 60-455(d) regarding Hailey's sexual abuse of E.G. and K.V. And while the evidence of child pornography is a closer call, any error in the admission of that evidence was harmless.*

In addition to his constitutional challenges to K.S.A. 2018 Supp. 60-455(d), Hailey also argues that the district court erred when it allowed the State to present evidence of three instances of Hailey's prior sexual misconduct under that statute: evidence of (1) his sexual abuse of his daughter, E.G.; (2) his rape of one of his previous wives; and (3) his history of viewing child pornography. Hailey argues that the last two categories of evidence listed have no relevance to M.H.'s allegations in this case. He also asserts that the prejudicial effect of each instance of sexual misconduct evidence "vastly outweighed its limited probative value."

This court reviews a district court's admission or exclusion of evidence for an abuse of discretion. K.S.A. 60-445; *State v. Lowrance*, 298 Kan. 274, 291, 312 P.3d 328 (2013). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

In cases involving sex offenses, K.S.A. 2018 Supp. 60-455(d) provides that "evidence of the defendant's commission of another act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative." Thus, before admitting evidence under this provision, a court must consider whether the other sexual misconduct is relevant to the offense presently at issue. Evidence is relevant if it has any tendency in reason to prove any material fact—that is, if it is both probative and material. K.S.A. 2018 Supp. 60-401(b); *State v. Page*, 303 Kan.

548, 550, 363 P.3d 391 (2015). Evidence is probative if it "furnishes, establishes, or contributes toward proof." *State v. Coones*, 301 Kan. 64, 78, 339 P.3d 375 (2014). Evidence is material when the fact it supports is in dispute and is significant under the substantive law of the case. *State v. McCormick*, 305 Kan. 43, 47, 378 P.3d 543 (2016). While materiality is reviewed de novo, we review a district court's probative weighing of the evidence for an abuse of discretion. *Coones*, 301 Kan. at 78.

Although the language of K.S.A. 2018 Supp. 60-455(d) is "expansive and places little limitation on admitting" evidence of other incidents of sexual misconduct, both the language of the statute and Kansas caselaw demonstrate that its admissibility is not unlimited. *Boysaw*, 309 Kan. at 539; see also K.S.A. 2018 Supp. 60-455(d) (indicating admission is subject to limitation of K.S.A. 60-445). Rather, courts must weigh the probative value of the evidence versus its potential for producing undue prejudice when determining the admissibility of K.S.A. 60-455(d) propensity evidence in cases involving sex crimes. 309 Kan. at 540; see K.S.A. 60-445. Appellate courts do not reweigh the probative value of evidence against its potential prejudice, but rather review a district court's determination for an abuse of discretion. *Lowrance*, 298 Kan. at 291.

To weigh the probative value of evidence against its potential prejudicial effect, the Kansas Supreme Court has recently applied factors from the Tenth Circuit's decision in *Benally*, 500 F.3d at 1090-91, namely "how clearly the prior act was proved; how probative the evidence is of the material fact sought to be proved; how seriously disputed the material fact is; and whether the government can obtain any less prejudicial evidence." *Boysaw*, 309 Kan. at 541. Further, in weighing the probative value of such evidence against its prejudicial effect, a district court "should consider, among other factors: the likelihood that such evidence will contribute to an improperly based jury verdict; the extent to which such evidence may distract the jury from the central issues of the trial; and how time consuming it will be to prove the prior conduct." *Boysaw*, 309 Kan. at 541 (referencing *Benally*, 500 F.3d at 1090-91).

Hailey appears to acknowledge on appeal the relevance of the evidence of Hailey's sexual relations with his daughter, E.G., who was very close to the same age as M.H. and who looked like M.H. (to the point that the cousins referred to each other as "twins"). Further, the alleged actions by Hailey in both circumstances are similar: pinning the young person onto the bed and using his size and weight to facilitate the sexual activity. But Hailey argues that this evidence had limited probative value because no corroborating evidence supported E.G.'s allegations and because E.G. had experienced abuse from a daycare provider around the same time, and the potential for undue prejudice was great.

Other Kansas courts have agreed with the district court that allegations of sexual misconduct against one minor are relevant and material in a case involving another minor's allegations of sexual misconduct. See *State v. Remmert*, 298 Kan. 621, 627-28, 316 P.3d 154 (2014) (prior diversion for sex crime against young girl relevant to guilt in prosecution for sex crime against young boy); *State v. Prine*, 297 Kan. 460, 480, 303 P.3d 662 (2013) (defendant's prior sexual abuse of daughter and younger sister admissible propensity evidence in prosecution for sex abuse against friend's daughter). Particularly here, where E.G. and M.H. were similar ages, looked similar, and experienced similar abuse; where E.G. was not aware of M.H.'s allegations at the time she came forward to describe her experiences; and where Hailey had previously indicated that he would rely on the fact that he had a young daughter as a defense against M.H.'s allegations, we find no abuse of the district court's discretion in admitting this evidence.

The district court similarly did not abuse its discretion in allowing testimony regarding Hailey's former sexual misconduct and aggression toward his ex-wife, K.V. While this evidence was less similar to M.H.'s allegations in that it occurred between adults during a marriage, it nevertheless showed a pattern of sexual aggression and intimidation when the target of the sexual advances was unwilling. Further, the delay in

13

M.H.'s reporting of Hailey's sexual misconduct was central to Hailey's defense, and both K.V. and M.H. testified that Hailey threatened them to ensure they would comply and not disclose the abuse to anyone else.

While this evidence is undoubtedly prejudicial against Hailey, it is not *unduly* prejudicial. The risk of undue prejudice, as opposed to the regular amount of prejudice necessary to prosecute a case, "'turns not on whether the evidence is damaging but on whether the evidence is likely to contribute to an improper jury verdict or distract from the central issues at trial.'" *State v. Perez*, 306 Kan. 655, 671, 396 P.3d 78 (2017). The district court here carefully parsed out the various aspects of K.V.'s story, finding that some elements (such as Hailey's preference for K.V. to wear young-looking clothing and pigtails or his penchant for adult pornography) were excluded because they were more of a distraction than they were probative. We conclude the district court did not abuse its discretion in allowing the testimony that was presented regarding K.V. and Hailey's interactions to go to the jury.

The evidence regarding the child pornography and related charges against Hailey provides a closer question. On the one hand, it is true that Hailey's defense was a general denial—that he did not and would not rape M.H. It is also true that M.H. was eight years old at the time of the alleged rape and that evidence that Hailey had around the same time been found with child pornography on his computer is relevant in that it could demonstrate his sexual interest in and misconduct toward minors. But on the other hand, the district court's initial balancing of the probative value of this evidence against its potential for undue prejudice gives this court pause. Admitting the child pornography charges to help explain why A.G. was seeking full custody of E.G. seems strained, especially when E.G. was already providing testimony regarding the instance of Hailey's sexual abuse. And we are somewhat troubled by the court's initial ruling that the State could produce evidence regarding the child pornography charges but could not introduce any evidence that Hailey was subsequently acquitted of those charges.

14

On balance, we conclude that although a different court may have come to a different conclusion when weighing the probative value of the child pornography charges against their prejudicial effect, the district court did not abuse its discretion in balancing the evidence in the way it did. Further, even if we were to conclude that it was error to admit the evidence of Hailey's child pornography charges, that error would be harmless. Hailey elicited testimony from A.G. and others that he was acquitted of those charges. And as the State notes in its brief on appeal, the evidence against Hailey presented at trial was strong. See *State v. McCullough*, 293 Kan. 970, 983, 270 P.3d 1142 (2012). The district court committed no reversible error in admitting this evidence under K.S.A. 2018 Supp. 60-455(d).

2. *The district court did not abuse its discretion in denying Hailey's request for a psychological evaluation of M.H.*

Before trial, Hailey's counsel moved for an order compelling a psychological evaluation of M.H., arguing such an evaluation was warranted given the delayed disclosure of M.H.'s allegations, the fact that M.H.'s allegations lacked physical evidence, and M.H.'s mental instability shown by her suicide attempts and ongoing counseling. The district court denied the request, finding Hailey showed no compelling reason why M.H. should submit to a psychological exam. Notably, the court found that none of M.H.'s actions called her veracity into question.

A defendant in a case involving a sex offense is "entitled to a psychological examination of the complaining witness on a showing of compelling circumstances that warrant the psychological examination." *State v. Berriozabal*, 291 Kan. 568, Syl. ¶ 4, 243 P.3d 352 (2010). In determining whether compelling circumstances exist, a district court considers the "totality of the circumstances," 291 Kan. 568, Syl. ¶ 5, including:

"(1) whether there was corroborating evidence of the complaining witness' version of the facts, (2) whether the complaining witness demonstrates mental instability, (3) whether the complaining witness demonstrates a lack of veracity, (4) whether similar charges by the complaining witness against others are proven to be false, (5) whether the defendant's motion for a psychological evaluation of the complaining witness appears to be a fishing expedition, and (6) whether the complaining witness provides an unusual response when questioned about his or her understanding of what it means to tell the truth." 291 Kan. 568, Syl. ¶ 5.

Kansas courts refer to these nonexclusive considerations as the "*Gregg* factors," after *State v. Gregg*, 226 Kan. 481, 490, 602 P.2d 85 (1979). Appellate courts review a district court's consideration of the *Gregg* factors and subsequent decision whether to grant a psychiatric evaluation of a complaining witness for an abuse of discretion. *State v. McCune*, 299 Kan. 1216, 1230, 330 P.3d 1107 (2014).

On appeal, Hailey argues that the district court failed to properly analyze two of the *Gregg* factors—the lack of corroborating evidence and M.H.'s mental instability— thus committing an abuse of discretion. In particular, Hailey asserts that the lack of any evidence to corroborate M.H.'s account of the alleged rape and M.H.'s subsequent history of cutting, need for counseling, and suicidal ideations provided compelling reasons for a psychological evaluation in this case. A review of the record demonstrates that the district court found that the lack of corroborating evidence in this case was indeed a factor that weighed in favor of Hailey's request for a psychological examination. But the totality of the circumstances in this case nevertheless demonstrated a lack of compelling reasons for such an examination.

Most notably, in reaching its conclusion that an additional examination was unnecessary, the district court reviewed the therapist records of two separate therapists— records Hailey also had to review, reference, and offer as evidence. The court noted that M.H. had maintained a consistent description of the alleged rape before both therapists,

which descriptions were also consistent with the account provided in this case. The court also had the opportunity to observe M.H.'s demeanor and concluded, in light of all of the evidence and considering the factors set forth in *Gregg* and *Berriozabal*, there were no compelling circumstances in this case demanding a psychological examination.

Hailey argues that the district court should have conducted its analysis of the *Gregg* factors without giving credence to M.H.'s allegations here, but the court instead explained its rationale that a psychological examination was unnecessary because M.H.'s delay in reporting the incident and history of self-harm are typical in someone who experienced the type of abuse M.H. described. But Kansas caselaw requires a district court to consider the *totality of the circumstances*, not to categorically exclude certain considerations. Indeed, a decision requiring a court to exclude from its consideration any effect the alleged sex offense may have on a complaining witness could effectively give rise to a presumed need for a psychological examination in every crime involving a sex offense. That is not the law in this state. See *Berriozabal*, 291 Kan. at 585.

Hailey attempts to compare M.H. to the complaining witness in *State v. Bourassa*, 28 Kan. App. 2d 161, 15 P.3d 835 (1999). There, the Court of Appeals found that the district court abused its discretion when it denied the defendant's motion for a psychological evaluation, citing evidence that the alleged victim was under psychological care at a mental health treatment facility, was on Prozac, recently accused her father of sexually molesting her, mutilated two kittens, and often soiled herself. The court found that those facts showed mental instability and a possible lack of veracity, providing compelling reasons for a psychological examination. 28 Kan. App. 2d at 166-67.

The facts here are distinguishable from *Bourassa*. In *Bourassa*, the victim's sister testified that she was present and no improper sexual contact occurred, but no such witnesses testified here, and the district court repeatedly noted that M.H. did nothing to bring her veracity into question. See 28 Kan. App. 2d at 166. Although M.H. engaged in

17

acts of self-harm and participated in therapy, she did not partake in other destructive or violent acts, nor did she accuse anyone else of abuse. The district court described M.H.'s symptoms of mental instability as nothing extraordinary when considering her allegations against Hailey, and she showed no lack of veracity or reason not to tell the truth.

The district court conducted a careful analysis of the *Gregg* factors in this case. It did not abuse its discretion, under the totality of the circumstances, in denying the request for a psychological examination of M.H.

3. *The district court's sentence, based on Hailey's criminal-history score, did not violate the defendant's constitutional rights.*

Lastly, Hailey argues that the district court violated his constitutional rights under *Apprendi v. New Jersey*, 530 U.S. 466, 477, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), when it used his prior convictions to determine his criminal-history score at sentencing. *Apprendi* held that the Sixth Amendment to the United States Constitution requires any fact that increases a presumptive penalty to be proved to a jury beyond a reasonable doubt. 530 U.S. at 490.

Hailey concedes that the Kansas Supreme Court has decided this issue against him. See *State v. Ivory*, 273 Kan. 44, 45-48, 41 P.3d 781 (2002). The Supreme Court has provided no indication that it is departing from its conclusion in *Ivory* and its progeny. See *State v. Overman*, 301 Kan. 704, 716, 348 P.3d 516 (2015); *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015) (Court of Appeals duty bound to follow Supreme Court precedent). The district court did not violate Hailey's constitutional rights when it considered his prior criminal history in applying the Kansas sentencing guidelines.

Affirmed.