NOT DESIGNATED FOR PUBLICATION

No. 118,555

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

EDWARD BRUNSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed February 7, 2020. Affirmed.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Ethan Zipf-Sigler*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., LEBEN, J., and WALKER, S.J.

PER CURIAM: Edward Brunson seeks the reversal of his convictions on six counts of aggravated sodomy, primarily arguing that evidence of other sex crimes he had committed was improperly admitted at his trial. Although a statute, K.S.A. 2018 Supp. 60-455(d), allows the admission of such evidence against defendants in sex-crime cases, Brunson argues that the statute violated his rights under the Kansas Constitution.

But the Kansas Supreme Court recently held in *State v. Boysaw*, 309 Kan. 526, 536, 439 P.3d 909 (2019), that K.S.A. 2018 Supp. 60-455(d) doesn't violate rights

1

guaranteed by the United States Constitution. And Kansas courts have consistently held that the Kansas constitutional provisions that Brunson says were violated provide the same protections as the analogous federal constitutional provisions. See 309 Kan. at 537. Brunson hasn't explained why this longstanding interpretation of the Kansas constitutional provisions is incorrect, so he has not shown that this statute violates the Kansas Constitution.

Brunson also argues that this evidence should not have been admitted because, even under the statute, the evidence must be more probative of a disputed issue than unduly prejudicial against the defendant. But the district court's decision on that point is reviewed only for an abuse of discretion, and we conclude a reasonable person could agree with the district court's conclusion that the evidence was more probative than prejudicial.

Brunson makes two additional arguments unrelated to his evidentiary claims. First, he contends that the prosecutor made improper statements during jury selection and opening argument to the jury. But we conclude that those statements were within the broad discretion given to attorneys presenting a case at trial. Second, Brunson contends that the district court erred by sentencing him to three consecutive life sentences without the chance of parole for his crimes. As he points out, a person can't really serve three life sentences; we all have but one life. But sentences serve many purposes, including retribution, and the Kansas Supreme Court has upheld several other sentences that would exceed a defendant's life expectancy. We find no error in the sentences imposed here.

Brunson has not shown that the district court erred when conducting his trial or when sentencing him. We therefore affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In 2015, Brunson's sister, E.B., reported that Brunson had sexually abused her son, A.E., and his cousin, A.M., beginning in 2011 at the Kansas City, Kansas home of the woman they considered to be their grandmother. E.B. told the jury that she learned that Brunson had molested A.E. and A.M. shortly in 2015, when her sister, A.T., called her and told her that their aunt had told A.T.

A.T. told the jury that she found out that Brunson had molested the boys on the day of Grandmother's funeral in 2012. She said Brunson's girlfriend had told the aunt that Brunson "had been touching the kids." A.T. also said A.M. initially denied that Brunson had molested him. It wasn't until a couple of years after the aunt initially told A.T. what Brunson had done that A.M. confirmed that what the aunt had said was true. A.T. told the jury that A.M. wrote on a piece of paper that Brunson had touched him and A.E. A couple of days after she found out about the abuse, A.T. said she called E.B. and told her.

E.B. said that after she and A.T. spoke, she asked A.E. if what A.T. had said was true. She said A.E. initially denied it, but that after a few minutes he admitted that Brunson had molested him. Although E.B. told the jury that she tried to get A.E. to tell her the details of Brunson molesting him, A.E. didn't want to talk to her because it was embarrassing. After the conversation between E.B. and A.E., E.B. went to A.T.'s house; A.M. then told E.B. that Brunson had also molested him. Shortly after that, E.B. reported the crimes to the Kansas City, Kansas Police Department.

The officer working the report desk when E.B. reported what happened, Phil Schwery, testified at trial. He said that both A.E. and A.M. came to the report desk and told Schwery what had happened. Then Schwery described how the boys used a cell phone note application to type out a message describing what Brunson had done to them. Schwery read that cell phone note from his report:

3

"He made us suck it. He sucked ours. He put our faces in the pillows so we couldn't be heard. When we tried to make him stop, he put it in more. He told us that it was okay and nobody has to know. When we were in the basement, he would make us do things together and made us do things to each other that we didn't want to do . . . . He would guard the doors, he would make us pee in his mouth, he made us watch him pee. He told us stories about how he had sex with our mamas. He said that he had sex with our Uncle . . . . He told us that if we did what he said, he would give us money or something, basically bribing us to do things with him. When we had family get-togethers, he would stare at us to make sure we don't tell and we would look away and he always had a way to get to us. And the reason we never said nothin' is 'cause we was scared to lose our parents."

Schwery said his involvement with the case ended after he interviewed the boys.

A.M. was 18 years old when the trial took place. He told the jury that he first met Brunson, his uncle, when A.M. was about 10 years old. He said that he first met Brunson at Grandmother's house and that the abuse began in the summer after they met.

A.M. said he would talk to Brunson at Grandmother's house because Brunson cut his hair. After Brunson finished cutting A.M.'s hair, A.M. said he went to Brunson's room to watch T.V. and when Brunson came into his room, he locked the door and told A.M. to take his clothes off. After that, A.M. said Brunson took his penis out and told A.M. to kiss it; then Brunson performed anal sex on A.M. A.M. said that Brunson cut his hair every other week and that the sexual abuse would happen every time he got his hair cut.

A.M. told the jury that Brunson started to abuse A.E., who was eight or nine years old at the time, about one to two years after Brunson started to abuse A.M. He said the first time Brunson abused A.M. and A.E. together, Brunson had asked them "to pee in his

4

mouth." A.M. also said that Brunson asked A.M. and A.E. to "suck each other's penis[es]" and that Brunson tried to perform anal sex on A.E. that day.

A.M. said that Brunson threatened to kill him if he ever told anyone about what Brunson had done to him and A.E. He said he never told anyone about the abuse because he didn't want his mom or anyone else in the family to get in trouble. Finally, A.M. said the abuse happened about every other week until he was 14 or 15 years old—a period of about four years—but that Brunson had abused A.E. fewer times. A.M. said that the abuse finally ended when Grandmother died.

A.E., who was 16 years old at the time of trial, also testified. He told the jury that like A.M., he went to Grandmother's house to visit and have Brunson cut his hair. A.E. said that Brunson would sometimes tell him and A.M. to go into his room and "[Brunson] used to like [to have] oral sex and stuff with us and physical sex."

A.E. described how Brunson would make him and A.M. perform oral sex on Brunson, how Brunson would perform oral sex on the boys, and how Brunson would make the boys perform oral sex on each other. Then A.E. told the jury that Brunson also would perform physical—or anal—sex on him and that Brunson would make A.M. perform anal sex on A.E. A.E. said that he never told anyone what happened because "[Brunson] always said if we tell, he's gonna hurt us or have somebody hurt us." A.E. echoed A.M.'s statement that Brunson had performed more sex acts on A.M. than on A.E.

When asked about his report to the police officer, A.E. said he wrote what had happened in a note app on his cell phone. He said that he wrote most of the note he showed to the police officer but that A.M. also contributed to it. Finally, like his cousin, A.E. said Brunson threatened to hurt him if he ever told anyone about what had happened.

5

When Brunson's girlfriend testified, she described how her relationship with Brunson developed and how it became more serious after Grandmother died. The girlfriend said Brunson moved in with her shortly after Grandmother died. She told the jury that around the time Grandmother died Brunson "got to talking about the boys and what had happened . . . ." She said she told Brunson that he needed to tell the boys' moms so the boys could get tested for HIV. After that conversation, the girlfriend told Brunson's aunt what Brunson had told her.

The State also presented evidence that Brunson had a propensity to commit sexual abuse against minors. At a pretrial hearing, the State asked the court to admit evidence of Brunson's prior sex-crime convictions, including one for sodomizing an 11-year-old girl and one for raping his sister. The court granted the State's request. Then at trial, over Brunson's objection, E.B. testified that Brunson had sent her a letter when she was younger in which he admitted to molesting her and A.T. She also told the jury that Brunson had made sexually charged comments towards her as recently as 2011 or 2012. The court also allowed Brunson's other sister, A.T., to tell the jury how Brunson raped her when she was 12 years old and that Brunson went to jail for that crime.

Brunson called the aunt to testify in his defense. Her testimony was consistent with the testimony that Brunson's girlfriend and sisters gave. She said that in 2012, after Brunson's girlfriend told her about what Brunson had done, she "went back to [Brunson's sisters] and explained to them what [Brunson's girlfriend] had told me what had happened to the boys."

Brunson testified in his own defense. He told the jury that he and his girlfriend broke up with each other because he was diagnosed with HIV and he wanted to be in an open relationship and she didn't. He also denied ever telling his girlfriend that he had molested his nephews. Then Brunson said that he and his girlfriend lived together from the time Grandmother died until "the end of 2014 [to the] beginning of 2015."

6

The jury convicted Brunson of all six counts. The district court sentenced him to life in prison without the possibility of parole on each of the six counts of aggravated criminal sodomy. Although each sentence would be sufficient to keep Brunson in prison for his entire life, the district court made three of the sentences consecutive to one another, giving Brunson three consecutive life-without-parole sentences. (The other sentences are concurrent, so they run at the same time as the first life-without-parole sentence.)

Brunson has appealed to this court.

ANALYSIS

I. *Brunson Has Not Shown that 60-455(d) Violates Rights Guaranteed Under the Kansas Constitution.*

Brunson first argues that K.S.A. 2018 Supp. 60-455(d) is unconstitutional because it erodes a defendant's fundamental right to a presumption of innocence by allowing a jury to consider a defendant's prior convictions. He encourages this court to find K.S.A. 2018 Supp. 60-455(d) unconstitutional "because it denies defendants the right to a fair trial and due process under the Kansas Constitution."

We should note that Brunson raises this issue for the first time on appeal. Although the general rule is that we don't address issues raised for the first time on appeal, an exception—when consideration of the claim is necessary to prevent the potential denial of fundamental rights—applies here. See *State v. Reed*, 306 Kan. 899, 902, 399 P.3d 865 (2017); *State v. Thatch*, 305 Kan. 72, 81, 378 P.3d 522 (2016).

Whether K.S.A. 2018 Supp. 60-455(d) is unconstitutional is a question of law, so we have unlimited review. *Miller v. Johnson*, 295 Kan. 636, 647, 289 P.3d 1098 (2012). "When a statute's constitutionality is attacked, the statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe that statute as constitutionally valid, this court has the authority and duty to do so." 295 Kan. at 646-47.

With that background, we turn to the rules of evidence. Generally speaking, a prosecutor is prohibited from admitting evidence of prior sexual misconduct or prior convictions—also known as propensity evidence—to show that the defendant has a propensity to commit the charged crime. See K.S.A. 2018 Supp. 60-455(a); *State v. Prine*, 297 Kan. 460, 475-76, 303 P.3d 662 (2013). But this rule is provided by statute, and the Legislature adopted an exception applicable only in sex-crime prosecutions after the *Prine* decision addressed the issue in 2013. Now, K.S.A. 2018 Supp. 60-455(d) provides that the State may use "evidence of the defendant's commission of another act or offense of sexual misconduct" when the defendant is charged with a sex offense and that evidence "may be considered for its bearing on any matter to which it is relevant and probative."

Here, the district court allowed the State to present evidence of Brunson's prior sex-crime convictions for incest and for sodomizing an 11-year-old girl, along with testimony that he had molested his sisters when they were children and made unwanted sexual gestures towards them as adults. The State presented this as propensity evidence to prove that Brunson was inclined to commit crimes similar to those for which he was on trial.

Since the statute plainly authorizes the admission of propensity evidence in a case like this one, Brunson must make one of two arguments to show error. He must either

8

show that the statutory criteria for admission weren't met or that the statute itself is unconstitutional. Brunson has made both arguments; here, we address constitutionality.

Brunson argues that admitting this evidence under K.S.A. 2018 Supp. 60-455(d) violated his rights under sections 10 and 18 of the Kansas Constitution Bill of Rights.

Section 10 of the Kansas Constitution Bill of Rights provides basic rights to defend oneself before an impartial jury:

> "In all prosecutions, the accused shall be allowed to appear and defend in person, or by counsel; to demand the nature and cause of the accusation against him; to meet the witness face to face, and to have compulsory process to compel the attendance of the witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed. No person shall be a witness against himself, or be twice put in jeopardy for the same offense."

Section 18 of the Kansas Constitution Bill of Rights provides general due-process rights: "All persons, for injuries suffered in person, reputation or property, shall have remedy by due course of law."

To support his position, Brunson cites two out-of-state cases: (1) the Iowa Supreme Court's decision in *State v. Cox*, 781 N.W.2d 757, 759, 768-69 (Iowa 2010), where the court ruled that using propensity evidence in sex-crime cases violated the defendant's due-process rights under the Iowa Constitution; and (2) the Missouri Supreme Court's decision in *State v. Ellison*, 239 S.W.3d 603, 608 (Mo. 2007), in which the court ruled that "[e]vidence of a defendant's prior criminal acts, when admitted purely to demonstrate the defendant's criminal propensity, violates one of the constitutional protections vital to the integrity of our criminal justice system."

9

But in *State v. Boysaw*, 52 Kan. App. 2d 635, 648-49, 372 P.3d 1261 (2016), *aff'd* 309 Kan. 526, 439 P.3d 909 (2019), our court found K.S.A. 2015 Supp. 60-455(d) constitutional, rejecting an argument based on *Cox* and *Ellison*. After Brunson and the State had filed their briefs in this appeal, the Kansas Supreme Court affirmed our ruling in *Boysaw*.

In its opinion, the Kansas Supreme Court first determined that K.S.A. 2018 Supp. 60-455(d) did not violate due process under the United States Constitution. That conclusion was based in part on the court's finding that "K.S.A. 2018 Supp. 60-455(d) does not offend any principle of justice so rooted in the traditions and conscience of the people of this state that it may be deemed fundamental." *Boysaw*, 309 Kan. at 536.

After finding that K.S.A. 2018 Supp. 60-455(d) did not violate the federal Constitution, the court then considered the defendant's argument that K.S.A. 2018 Supp. 60-455(d) violated the Kansas Constitution. The court first noted that Kansas courts have historically "analyzed sections 10 and 18 as coextensive with their federal counterparts." *Boysaw*, 309 Kan. at 537. Then the court instructed that "[a]ny future challenge to the admission of propensity evidence under K.S.A. 2018 Supp. 60-455(d) that is based on state constitutional provisions will need to explain why this court should depart from its long history of coextensive analysis of rights under the two constitutions." 309 Kan. at 538.

While Brunson cites both state and federal cases in support of his argument, he doesn't address why the Kansas Supreme Court should abandon its longstanding practice of interpreting sections 10 and 18 of the Kansas Constitution Bill of Rights as coextensive with their federal counterparts. Without such an argument—and considering the Kansas Supreme Court's recent rejection of a challenge to K.S.A. 2018 Supp. 60-455(d) in *Boysaw*—we reject Brunson's argument that K.S.A. 2018 Supp. 60-455(d)

deprives him of the constitutional protections afforded in sections 10 and 18 of the Kansas Constitution. See *State v. Razzaq*, 309 Kan. 544, 550, 439 P.3d 903 (2019).

We do recognize that the Kansas Supreme Court's opinion in *Boysaw* was released after the briefs were filed in Brunson's appeal to our court. Even so, Brunson provides no meaningful rationale for changing the longstanding practice of interpreting these Kansas constitutional provisions as coextensive with their federal counterparts. That established practice was well known before the briefs were filed here.

II. *The District Court Didn't Abuse Its Discretion in Admitting Evidence of Brunson's Prior Sex-Crime Convictions and Other Uncharged Sexual Offenses to Show Propensity.*

As we have already noted, there was a second avenue available for Brunson to challenge the admission of the propensity evidence. The statute has criteria under which such evidence may be excluded; Brunson argues that the district court should have excluded the evidence because its prejudicial effect outweighed its probative value. We set out the evidence presented earlier in the opinion.

When determining whether to admit evidence, a district court has to decide whether the evidence is relevant. As a general rule, all relevant evidence is admissible. K.S.A. 60-407(f). Evidence is relevant if it has any tendency in reason to prove any material fact. K.S.A. 60-401(b); *State v. Page*, 303 Kan. 548, 550, 363 P.3d 391 (2015). But even if evidence is relevant, a district court may exclude it if the court finds the evidence's probative value is outweighed by its prejudicial effects. K.S.A. 2018 Supp. 60-445. This court reviews a district court's balancing of probative value against undue prejudice for an abuse of discretion. *State v. Perez*, 306 Kan. 655, 670, 396 P.3d 78 (2017). A district court abuses its discretion when its decision is based on either an error of fact or law, or when no reasonable person could agree with the court's decision. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

In *Boysaw*, 309 Kan. at 541, our Supreme Court said "[n]o set test exists for weighing probative value against prejudicial effect." Still, the court relied on decisions from the United States Court of Appeals for the Tenth Circuit to instruct that when a district court evaluates the probative value of evidence of other crimes, it should consider "how clearly the prior act was proved; how probative the evidence is of the material fact sought to be proved; how seriously disputed the material fact is; and whether the government can obtain any less prejudicial evidence." 309 Kan. at 541 (citing *United States v. Benally*, 500 F.3d 1085, 1090-91 [10th Cir. 2007]). Other factors that may be considered when evaluating the probative value of prior acts and convictions are similarity, closeness in time, number of prior acts, intervening circumstances, and the necessity of the evidence beyond what has already been offered at trial. See *Benally*, 500 F.3d at 1090-91 (cited with approval in *Boysaw*, 309 Kan. at 541).

Here, there's no dispute that Brunson committed the sex crimes for which he was previously convicted; he admitted at his trial that he had committed those crimes. Brunson did deny, though, that he ever wrote a letter in which he admitted to raping his sisters when they were young. He also denied making inappropriate sexual comments towards E.B. as an adult.

But even if we limit our consideration to his convictions, that evidence is probative of the crimes involved in this case. The victim in Brunson's sodomy case was 11 years old—similar to A.M.'s and A.E.'s ages when Brunson abused them. And the aggravated incest conviction showed Brunson's propensity to commit sexual acts toward his family members.

It's worth noting that the victims of Brunson's prior convictions and the alleged prior sexual misconduct were all girls, while the victims of the current crimes were boys. But both A.T. and Brunson's girlfriend told the jury that Brunson was bisexual. So the

evidence of his prior sexual misconduct was still probative because of the State's evidence that he was attracted to both sexes.

Brunson argues that the evidence wasn't probative because the crimes underlying his prior convictions happened in 1992 and 1993—about 20 years before these crimes took place. He says that during those 20 years or so, he was released from prison and reintegrated into society—both things he says are intervening factors that go against the probative value of the evidence.

That may be so. But the similarities between Brunson's current and prior crimes are too striking to disregard. In short, the evidence was highly probative in this case.

We turn next to the prejudicial effect from this evidence. When considering prejudicial effect, the court should consider "the likelihood that such evidence will contribute to an improperly based jury verdict; the extent to which such evidence may distract the jury from the central issues of the trial; and how time consuming it will be to prove the prior conduct." *Boysaw*, 309 Kan. at 541 (citing *Benally*, 500 F.3d at 1090-91).

Here, the district court correctly explained that the evidence at issue was prejudicial toward Brunson. See *State v. Garcia*, 285 Kan. 1, 18, 169 P.3d 1069 (2007). But despite the evidence being prejudicial, the court concluded that it wasn't more prejudicial than it was probative. That's a reasonable conclusion here and thus not an abuse of discretion. The similarities between Brunson's prior acts and current crimes are strong. And considering the abundance of other evidence against Brunson, it's unlikely that the court's decision to admit the evidence would have contributed to an improperly based jury verdict. We conclude that a reasonable person could agree with the district court that the prejudicial effect of the evidence did not outweigh its probative value. So the district court did not abuse its discretion in admitting this evidence.

13

III. *The Prosecutor Didn't Err During Voir Dire and Opening Statements.*

Brunson next argues that the prosecutor erred during voir dire and opening statements. When analyzing claims of prosecutorial error, we first ask whether the prosecutor's comments were improper and outside the wide latitude that the State has to prove its case. If they were, we then ask whether the improper comments prejudiced the jury against the defendant and denied the defendant a fair trial. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). "A defendant is denied a fair trial when a prosecutor misstates the law and the facts are such that the jury could have been confused or misled by the statement." *State v. Robinson*, 306 Kan. 431, 440, 394 P.3d 868 (2017); see *State v. Huddleston*, 298 Kan. 941, 946, 318 P.3d 140 (2014).

Brunson first says the prosecutor erred during jury selection when she was explaining to the jury members how they would be required to follow the law regardless of whether they believed the law was right or wrong. During jury selection, the prosecutor told the jury:

> "Let's say you don't agree with what the law is. The example that I use quite often . . . is possession of marijuana. In the State of Kansas possession of marijuana is still a crime, but there are obviously a portion of the community that does not agree with that . . . . So that type of example, if there is something like that where you don't believe some of the elements that you are given that that should be a crime, but the judge is instructing you that those elements are. And if you believe them beyond a reasonable doubt, *you should find the defendant guilty*. If you don't believe a portion of those instructions, do you believe you would not be able to be fair and impartial?" (Emphasis added.)

Brunson claims that the italicized language is the same as telling the jury that if it finds that the State has proved all the elements of the crime beyond a reasonable doubt, it "must" convict him and couldn't exercise its right of jury nullification.

14

Jury nullification happens when a jury intentionally rejects evidence or refuses to apply the law "either because [it] wants to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness." Black's Law Dictionary 989 (10th ed. 2014). In *State v. Naputi*, 293 Kan. 55, Syl. ¶ 4, 260 P.3d 86 (2011), our Supreme Court rejected the notion that a criminal jury should be instructed on its power of nullification. But in *State v. Smith-Parker*, 301 Kan. 132, 164, 340 P.3d 485 (2014), the court held that the district court improperly forbade the jury from exercising the nullification power.

Although Brunson acknowledges that the jury shouldn't be told that it has the right to nullify a verdict, he says it was incorrect of the prosecutor to suggest that it didn't have that right at all. This court addressed and rejected an argument similar to Brunson's in *State v. Cuellar*, No. 112,535, 2016 WL 1614037, at *2 (Kan. App. 2016) (unpublished opinion). In that case, the defendant argued that the prosecutor committed misconduct when during jury selection he informed the jurors that "'[they] will have decisions to make in this case, but one of those is not whether or not the law that will be applied here is fair or reasonable.'" 2016 WL 1614037, at *2. The defendant argued that the prosecutor's statement constituted a misstatement of the law and prevented the jury from exercising its power of nullification. We rejected the defendant's argument:

> "[I]t is clear that the prosecutor was simply explaining the jury's duty and ensuring that any potential jurors be willing to fulfill that role. And as our Kansas cases and statutes make clear that the jury's role is to decide questions of fact while accepting the rules of law, the prosecutor did not misstate the law." 2016 WL 16147037, at *3.

The same rationale applies in this case. Here, the prosecutor was simply urging the jurors to follow the law and telling them what they needed to do to fulfill their roles as jurors. She didn't misstate the law, and she didn't tell the jury that it didn't have the option

15

to exercise its power of nullification. She said jurors "should" find the defendant guilty under her hypothetical, not that they must do so. As our court said in *State v. Spalding*, No. 114,561, 2017 WL 1433513, at *7 (Kan. App. 2017) (unpublished opinion), *rev. denied* 307 Kan. 993 (2017): "The prosecutor's statements to the jurors during jury selection were proper statements of the law because although jurors have the power of nullification, they nonetheless have a duty to follow the law as provided by the district court." We conclude that the prosecutor did not err in her comments to the jury during jury selection.

Next, Brunson claims the prosecutor erred at the beginning of the State's opening statement when she told the jury it was a case about trust and stolen innocence:

> "This is a case about the innocence that was stolen from two young boys by a person they should have been able to trust. This is a case about a person who sexually abused his two nephews over the course of two years, who made the decision to play the role of judge, jury and executioner as far as making the choice for them that they would not have the opportunity to pick who and when they wanted to have a sexual relationship with. The person who is responsible for that, the person who did that is sitting behind me, and that's Mr. Edward Brunson."

Brunson argues that this statement "appeal[ed] to the passions and prejudices of the jury by suggesting that this case was about the 'innocence stolen from two young boys'" and by "put[ting] the jury in the place of contemplating themselves as the avengers of two innocent young children rather than as the neutral arbiters of fact." He also says the prosecutor overstepped her bounds by analogizing Brunson to the victims' "'judge, jury and executioner,'" thereby suggesting to the jury that the crimes Brunson was charged with committing "were akin to murder . . . ."

Generally, a prosecutor's statements are permissible as long as they are confined to the evidence and reasonable inferences that can be drawn from the evidence and aren't

16

designed to inflame the passions and prejudices of the jury. *State v. Akins*, 298 Kan. 592, 601-02, 315 P.3d 868 (2014) (prosecutor may not reference facts not in evidence); *State v. Hall*, 292 Kan. 841, 853, 257 P.3d 272 (2011) (prosecutor may not make statements that inflame the passions or prejudices of the jury). Further, a prosecutor has a duty to "ensure only competent evidence is submitted to the jury and avoid arguments that could prejudice the jurors' minds, preventing them from deciding the case on the evidence." *State v. Martinez*, 290 Kan. 992, 1015, 236 P.3d 481 (2010) (citing *State v. Ruff,* 252 Kan. 625, 636, 847 P.2d 1258 [1993]).

Here, neither of the statements Brunson says amounted to prosecutorial error by exceeding the limits of acceptable argument. First, the prosecutor's comments about the victims' innocence was tied closely to the evidence presented against Brunson. A.M. was between 10 and 11 years old when the abuse began, and the abuse the boys suffered at the hands of Brunson was entirely against their will. Even if the prosecutor hadn't explicitly referred to the victims' innocence, the evidence presented would have easily allowed the jury to infer that A.E. and A.M. had been robbed of their innocence. Referring to the boys' innocence didn't amount to prosecutorial error.

Second, when the prosecutor used the phrase "judge, jury, and executioner" in her opening statement, she was talking about the power Brunson exercised over A.M. and A.E. as far as the abuse went. She wasn't talking about murder; she was telling the jury that Brunson acted unilaterally in deciding whether and what kind of relationship the boys had with Brunson. Brunson also unilaterally decided what kind of abuse he would subject the boys to, how often he subjected them to it, and he controlled them by making them afraid of what would happen if they ever told anyone what Brunson had done. And the State's evidence supports the inferences the prosecutor wished to encourage the jury to draw by referring to the "judge, jury, and executioner." Thus, there was no error in making this statement either.

17

But even if the prosecutor's statements did exceed the wide latitude afforded to her during trial, we find that the outcome would've been the same. The evidence against Brunson was strong; both victims testified in detail about the abuse that Brunson inflicted upon them. Significantly, Brunson's ex-girlfriend told the jury that he had admitted to committing the crimes before the boys ever told their mothers about what happened. And E.B.'s and A.T.'s testimony demonstrated Brunson's predisposition to committing similar crimes.

Considering the volume and weight of the evidence the State presented against Brunson, even if the prosecutor's statements were improper, there's no reasonable possibility that they contributed to the jury's verdict.

IV. *The District Court Didn't Abuse Its Discretion by Imposing Three Consecutive Life Sentences Without the Possibility of Parole.*

Last, Brunson argues that the district court erred by imposing three consecutive life sentences without the possibility of parole because that sentence is too harsh. We review a district court's decision to impose sentences consecutively for an abuse of discretion. *State v. Ayers*, 309 Kan. 162, 165, 432 P.3d 663 (2019). A court abuses its discretion if its decision is based on an error of fact or law or if no reasonable person would agree with the decision. *Marshall*, 303 Kan. at 445.

Here, the jury convicted Brunson of six counts of sex crimes against children. Since he was an aggravated sex offender, he was subject to six life sentences without the possibility of parole. See K.S.A. 2018 Supp. 21-6626(a) (aggravated habitual sex offenders not eligible for the mandatory minimum term of 25 years in prison or parole). Of the six sentences, the district court made three of the sentences consecutive to one another, meaning that Brunson has three consecutive life sentences to serve and is not eligible for parole on any of them.

18

Brunson argues that by imposing three consecutive life sentences without the possibility of parole, "the district court showed its personal prejudice . . . ." He also said that ordering his sentences to run consecutively "served no practical purpose other than to make a general statement to the public, and particularly the victims in this case, of how horrendous the district court viewed the crimes in this case."

But sentences serve legitimate purposes beyond mere incapacitation of the defendant. In *Ayers*, the court noted that "[r]etribution is the oldest justification for sentencing and an important aspect—it is 'a merited response to the actor's deed . . . expressing moral reprobation of the actor for the wrong.'" 309 Kan. at 165. And the Kansas Supreme Court has upheld sentences similar to Brunson's.

In *Ayers*, for example, the court affirmed "the district court's imposition of on-grid sentences consecutive to Ayers' sentence of life imprisonment without the possibility of parole." 309 Kan. at 166. The court said that the consecutive sentences—after a life-without-parole sentence—fulfilled the retributive aspect of sentencing. See 309 Kan. at 165. The court also noted that it's common to sentence "defendants to terms of imprisonment they are unlikely to serve." 309 Kan. at 166.

Brunson suggests that *Ayers* was wrongly decided but acknowledges that this court is bound to follow Supreme Court precedent should it decide *Ayers* is sufficiently on point to control the result here. See *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). We conclude that even if *Ayers* is sufficiently dissimilar on the facts from Brunson's case to preclude his argument altogether, the sentencing court still did not abuse its discretion here.

The sentences the district court imposed weren't based on an error of fact or law, and a reasonable person could agree with the sentences. At sentencing, the district court

19

correctly noted that the crimes Brunson committed were "horrid" and "despicable." It also discussed the long-term impact that the crimes had on A.E., A.M., and their family, as well as how A.E. and A.M. had to testify in court about their experiences. With those considerations in mind, along with the Kansas Supreme Court's rationale affirming the sentences in *Ayers*, a reasonable person could agree with the district court that three consecutive life sentences without parole were appropriate sentences for Brunson.

We affirm the district court's judgment.